STATE v. CITY OF CLEARWATER.

184 So. 790.
Division A.
Opinion Filed November 25, 1938.

*Chester B. McMullen,* State Attorney, for Appellant; *John C. Polhill* and *S. E. Simmons,* for Appellee.

BUFORD, J.—The history of this case appears to be that the City of Clearwater being without adequate Yacht Basin facilities, and being the owner of. certain real estate on Clearwater Beach Island, and within the coroporate limits of said municipality, has determined to construct, operate and maintain thereon a Yacht Basin.   It was estimated that the cost of construction of the project would be the sum of $43,454.00.   In order to carry into effect the express intention and desire of the City, the City Commission of said City on the 26th day of August, 1938, duly passed and adopted Ordinance No. 431, being an Ordinance Providing for the Construction of a Yacht Basin and to Aid in Financing the Cost of said Construction, Providing for the issuance of $28,000.00 Revenue Certificates of the City of Clearwater, Florida, Payable Solely from the Revenues Derived from said Yacht Basin; in order to secure the loan to be made to the City of Clearwater by the United States of America, the City proposed in and by the terms of said Ordinance to issue Yacht Basin Revenue Certificates, in the aggregate principal amount of $28,000.00, said Yacht Basin Revenue Certificates to be payable from the revenues and income derived from the operation of said Yacht Basin, after provision for the payment of all operating costs.

On the 5th day of October, 1938, the City of Clearwater presented its petition setting forth the passage and adoption of the aforesaid Ordinance No. 431 and the publication thereof as required by law; said petition also set forth and

disclosed the passage by the City Commission of the City of Clearwater on the 26th day of August, 1938, of a Resolution calling and ordering a special election to be held in the City of Clearwater on the 27th day of September, 1938, in connection with the proposed issuance of the Yacht Basin Revenue Certificates, a copy of said Resolution being attached to the petition as Petitioner's Exhibit "E"; the petition averred that Notice of Election was published in The Clearwater Sun, a newspaper of general circulation published in the City of Clearwater, in the issues of August 27th, September 3rd, 10th, 17th and 24th, 1938; the petition further averred that for the purpose of determining the total number of qualified electors residing in said City and who were freeholders and entitled to participate in said election, the City Commission of said City did cause to be made up and certified by the registration officer having charge of the registration books of said City, a list of the names of all qualified electors appearing thereon who were determined to be freeholders in said City and who were also determined to be qualified to vote in said election; that said list was duly prepared and certified, copy of same being filed and preserved among the records of said City Commission, and a certified copy of said list was likewise furnished to the clerks and inspector at the voting place where the election was held; the petition averred that said election was duly held in the City of Clearwater on the 27th day of September, 1938, at which time it had been determined there were 1318 qualified electors residing in said City who were qualified to participate in said election; that the total number of votes cast in said election was as follows:

For Yacht Basin Revenue Certificates ...............531

Against Yacht Basin Revenue Certificates .........280

Mutilated Ballots and Not Counted .................... 28

. That the City Commission of the City of Clearwater duly canvassed the returns of said election and that said election resulted in favor of the approval of the issuance of said Yacht Basin Revenue Certificates, and said petition prayed that said Yacht Basin Revenue Certificates therein referred to be validated and confirmed.

The petition showed "that in and by the terms of the said Ordinance the form of the proposed Yacht Basin Revenue Certificates is fully set forth, that *inter alia* it is provided as follows: This certificate and the issue of which it is one are issued to aid in financing the cost of construction of a yacht basin, and are payable only from a sinking fund in which there shall be set aside annually in approximately equal monthly installments, out of the revenues and income derived from the operation of said Yacht Basin, *after provision for the payment of all operating costs* (underscoring ours), such sums as shall be sufficient for the payment of the interest on and principal of said Certificates as the same respectively shall become due, and this Certificate, together with all other Certificates of the issue of which this Certificate is one, and the interest thereon, are secured by a pledge of and exclusive first lien upon all revenues set aside in said sinking fund, all as in said Ordinance provided. This Certificate and the interest thereon are not payable from nor are a charge upon any funds other than the revenues pledged to the payment thereof and shall not impose any tax liability upon any real or personal property in the City of Clearwater, nor constitute a debt against said City."

On filing of the petition by the City of Clearwater an Order to Show Cause was promptly issued and Notice to Taxpayers. The Notice to Taxpayers was duly published as required by law and service was had on the State's Attorney.

Upon Order of the Court to show cause why the Yacht Basin Revenue Certificates should not be validated and confirmed, the State Attorney of the Sixth Judicial Circuit of Florida, on September 26th, 1938, filed an answer on behalf of the State of Florida. The pertinent allegations of the answer on behalf of the State were as follows:

"2. Further answering said petition and particularly paragraph two hereof, this Respondent avers that no authority is set forth therein for the issuance by Petitioner of said Yacht Basin Revenue Certificates. That under and by virtue of Chapter No. 9710, Laws of Florida, Acts of 1923, being the Charter Act of Petitioner, and by virtue of Section 2978 of the Compiled General Statutes of Florida, Petitioner is not authorized or empowered to issue the proposed Revenue Certificates. That there exists no authority under the Charter of Petitioner, or under the Constitution and statutes of the State of Florida, or any other laws applicable thereto wherein and whereby Petitioner may construct, operate and maintain a Yacht Basin and issue Revenue Certificates to aid in financing the cost thereof, which Revenue Certificates are payable solely from the revenue derived from operation and maintenance of said Yacht Basin. That under and by virtue of Chapter No. 9710, Laws of Florida, Acts of 1923, Section 142 thereof, Petitioner is authorized to issue bonds for certain purposes therein set forth, said bonds to involve the taxing power of Petitioner, but said bonds cannot now be lawfully issued by Petitioner, because of the matters and things hereinafter set forth.

"3. Respondent further states that under and by virtue of Section 118 of Chapter No. 9710, Laws of Florida, Acts of 1923, it is provided:

" 'The City Commission shall have the power to provide by ordinance for the issuance of negotiable bonds of said

City of Clearwater for municipal improvements of every nature and kind; and for funding or refunding any pre-existing bonded indebtedness; but negotiable bonds of said City shall never be issued in a greater amount than twenty per cent. of the assessed valuation of the real and personal property of said City, and then not until previously authorized by a majority vote of the qualified electors of said City who own at the time of said election real estate in said City, at a regular or special election called and held for such purpose.'

"Respondent avers that the assessed valuation of the real and personal property of the City of Clearwater for the year 1937 was the principal sum of $11,811,877.00, that the assessed valuation of the real and personal property of the City of Clearwater for the year 1938 was the prnicipal sum of $11,501,716.00; that Petitioner has heretofore lawfully issued and has outstanding bonds in the principal amount of $4,752,000.00, which amount of bonds is considerably in excess of twenty per cent. (20%) of the assessed valuation of the real and personal property in the City of Clearwater, that the bonds herein referred to are general obligation bonds of petitioner and for the payment of which petitioner is being required to levy ad valorem taxes and that the plan of petitioner in the issuance of said Revenue Certificates, in this Respondent's opinion, constitutes an unlawful attempt to circumvent the provisions of Section 118, of Chapter No. 9710, Laws of Florida, Acts of 1923.

"4. Further answering Respondent avers that the plan proposed by Petitioner for the issuance of said Yacht Basin Revenue Certificates constitutes a direct and/or indirect contingent pledge or obligation of Petitioner's taxing power, all in violation of Article IX, Section 6, of the Constitution, as amended, and Section 118, of Chapter No. 9710, Laws of Florida, Acts of 1923; that notwithstanding that the pay-

ment of the proposed Revenue Certificates to be issued by Petitioner is limited solely to the revenue derived from the operation of said Yacht Basin, Respondent avers that said Revenue Certificates constitute a debt within the meaning of the statutory limitation of Petitioner's bonded indebtedness and constitutes an indirect pledge of Petitioner's taxing power, all in violation of the Constitution and statutes of the State of Florida and the charter of Petitioner."

At the trial had upon the issues thus raised the Chancellor on October 26th, 1938, validated and confirmed the issuance of the Yacht Basin Revenue Certificates in the manner and form proposed. Thereafter the State of Florida, on October 31st, 1938, entered an appeal from the decree of validation and assigned as error, *inter alia,* the entry of the final decree dated October 26th, 1938, in Chancery Order Book 159, at page 399 of the public records of Pinellas County, Florida, wherein and whereby the Court validated and confirmed $28,000.00 Yacht Basin Revenue Certificates dated October 1st, 1938; and also assigned as error the validating and confirming of the Yacht Basin Revenue Certificates described in said Final Decree.

Final decree was entered as follows:

"It is hereby FOUND, ORDERED, ADJUDGED AND DECREED as follows:'

"1. That a copy of the petition herein and copy of the order to show cause, heretofore issued by this Court, has been duly served upon the State Attorney in the Sixth Judicial Circuit of Florida; that a notice addressed to the taxpayers and citizens of the City of Clearwater, Petitioner herein, requiring them to show cause if any they have, why the Revenue Certificates described in the Petition should not be validated and confirmed, has been duly published ac-

cording to law; and that this Court has jurisdiction of this cause and of the parties.

"2. That the matters and things set forth in the answer filed on behalf of the State of Florida, through Chester B. McMullen, as State Attorney for the Sixth Judicial Circuit of Florida, are insufficient and constitute no valid or lawful reason why the Yacht Basin Certificates as set forth and described in said Petition should not be validated and confirmed.

"3. That the Yacht Basin Revenue Certificates authorized to be issued by the City of Clearwater are not in violation of Article IX, Section 6, of the Constitution, as amended, and of Section 118 of Chapter No. 9710, Laws of Florida, Acts of 1923; that the proposed Revenue Certificates to be issued by the City of Clearwater do not constitute a debt within the meaning of the statutory limitation of Petitioner's bonded indebtedness, neither do said Revenue Certificates constitute an indirect pledge of the City of Clearwater's taxing power; and that said Yacht Basin Revenue Certificates are lawful and valid.

"4. That it is provided in said ordinance authorizing the issuance of said Yacht Basin Revenue Certificates that the said certificates are not payable from, nor are they a charge upon any fund other than the revenues pledged to the payment thereof, nor do said certificates impose any tax liability upon any real or personal property in the City of Clearwater, nor constitute a debt against said City of Clearwater.

"5. That under and by virtue of the Constitution and laws of the State of Florida, particularly Chapter No. 9710, Laws of Florida, Acts 1923, Petitioner was and is authorized and empowered to construct, own, operate and maintain a Yacht Basin, to fix and maintain rates and collect charges for the facilities and services of said Yacht Basin, and to

issue Yacht Basin Revenue Certificates payable from the revenues and income derived from the operation of said Yacht Basin, to aid in financing the cost of such construction, all as proposed and authorized by the ordinance referred to in the petition.

"6. That the ordinance authorizing the construction, operation and maintenance of a Yacht Basin within the corporate limits of the City of Clearwater, and providing for the issuance of Yacht Basin Revenue Certificates, which ordinance is mentioned and referred to in the petition herein, is in full compliance with all requirements of Chapter No. 9710, Laws of Florida, Acts of 1923, and was duly and regularly passed, adopted and put into effect in accordance with all requirements of the Charter of said City of Clearwater and all other laws applicable thereto; that all the covenants and agreements set forth in said last mentioned ordinance are valid and binding; that an election was duly and regularly held in said City of Clearwater on the 27th day of September, 1938, to determine whether or not a majority of the freeholders who were qualified electors, residing in said City, approved the issuance of said Yacht Basin Revenue Certificates; that at the time said election was held the total number of freeholders who were qualified electors, residing in said City of Clearwater was 1318, that the total number of freeholders who were qualified electors residing in said City of Clearwater, who participated in said election was 839, and that no persons other than freeholders who were qualified electors residing in said City of Clearwater participated in said election; that the total number of votes cast in said election in favor of the issuance of said Yacht Basin Revenue Certificates was 531, that the total number of votes cast in said election against the issuance of said Yacht Basin Revenue Certificates was 280, that the total number of mutilated ballots cast in said election,

and not counted, was 28; that said election was duly and regularly called and held pursuant to and in full compliance with the Constitution and laws of the State of Florida, particularly Amended Section 6, of Article IX, of the Constitution of Florida, and Chapter No. 9710, Laws of Florida, Acts of 1923, and that all acts, conditions and things required by the Constitution and laws of the State of Florida to exist, happen and be performed precedent to and in the issuance of said Yacht Basin Revenue Certificates exist, have happened and have been performed in due time, form and manner, as required by law.

"7. That the Yacht Basin Revenue Certificates described in the petition herein, in the aggregate principal amount of $28,000.00 to be dated October 1st, 1938, in the denomination of $1,000.00 each, numbered from 1 to 28, both inclusive, in order of maturity, bearing interest at the rate of four per centum (4%) per annum, payable semi-annually on October 1st and April 1st in each year, the first interest being payable April 1st, 1939, and payable as to both principal and interest at the office of the City Treasurer, in the City of Clearwater, or at the option of the holder, at the Chemical Bank & Trust Company, New York City, New York, maturing on October 1st in years and amounts as follows:

| Year | Amount | Year | Amount |
|------|--------|------|--------|
| 1942 | $1,000.00 | 1950 | $1,000.00 |
| 1943 | 1000.00 | 1951 | 1,000.00 |
| 1944 | 1,000.00 | 1952 | 1,000.00 |
| 1945 | 1,000.00 | 1053 | 1,000.00 |
| 1946 | 1,000.00 | 1954 | 1,000.00 |
| 1947 | 1,000.00 | 1955 | 1,000.00 |
| 1948 | 1,000.00 | 1956 | 1,000.00 |
| 1949 | 1,000.00 | 1957 | 1,000.00 |

| Year | Amount | Year | Amount |
|------|--------|------|--------|
| 1958 | 1,000.00 | 1963 | 1,000.00 |
| 1959 | 1,000.00 | 1964 | 1,000.00 |
| 1960 | 1,000.00 | 1965 | 1,000.00 |
| 1961 | 1,000.00 | 1966 | 1,000.00 |
| | | 1967 | 1,000.00 |
| 1962 | 1,000.00 | 1968 | 2,000.00 |

and interest coupons to be attached to said Yacht Basin Revenue Certificates as described in the Ordinance authorizing the same, a copy of which is attached to said petition and marked 'Petitioner's Exhibit A' and by reference thereto made a part thereof, be and the same are hereby validated and confirmed."

The parties state four questions for our determination as follows:

First Question: "Is the City of Clearwater authorized and empowered under the provisions of Section 142, Chapter No. 9710, Special Laws of Florida, Acts of 1923, being the Charter Act of said municipality, and Section 2978, Compiled General Laws of Florida of 1927, to construct, operate and maintain a yacht basin?"

Second Question: "Has the City of Clearwater the right to issue Yacht Basin Revenue Certificates in the form and manner proposed in the authorizing ordinance absent authority therefor either under the provisions of Chapter No. 9710, Special Laws of Florida, Acts of 1923, or under any other laws of the State of Florida?"

Third Question: "Do the proposed Revenue Certificates as set forth in the authorizing ordinance constitute a debt or bond within the meaning of Section 118 of Chapter No. 9710, Special Laws of Florida, Acts of 1923, the aforesaid Section containing the debt limitation of the City of Clearwater, and it appearing by the record in this proceeding that

the City of Clearwater already has outstanding general bonds for the payment of which *ad valorem* taxes are being levied in excess of the aforesaid charter debt limitation?"

Fourth Question: "Do the Revenue Certificates proposed to be issued by the City of Clearwater in the form and manner as set forth in the authorizing ordinance constitute an indirect or contingent pledge of the taxing power of the City of Clearwater?"

In the beginning it is necessary for us to determine what is contemplated in the term "Yacht Basin." In common acceptation of the term or phrase, it means or contemplates a system of channels, docks and wharves suitable for carrying, floating, anchoring, landing, loading and unloading yachts and other like sea-going craft.

Section 142 of Chapter 9710, Special Acts of 1923, provides as follows:

"Sec. 142. Public Works.—The City Commission shall have the power, within and without its corporate limits, to construct, condemn, purchase, acquire or lease, and to maintain, conduct and operate within and without the corporate limits, wharves, warehouses, ship channels, breakwaters, parks, drives, boulevards, causeways and bridges, telephone systems, transportation systems, cemeteries, pest houses, schools, hospitals and libraries, and to make a contract of whatever nature in connection therewith; and shall enforce such purchase, if necessary, by eminent domain proceedings; and shall have the right and power to issue bonds upon a majority vote of the electors of said City possessing the qualifications of electors in bond elections, at any general or special election, and to any amount necessary, to carry out any of said powers or purposes."

It appearing that a yacht basin is a combination of some of those facilities, the construction, operation and mainte-

nance of which is in terms authorized by the legislative Act, its construction, operation and maintenance come within the purview of the legislative authorization. The authorization to construct, operate and maintain yacht basins carries with it under the express provisions of Section 142, *supra,* the power and authority to issue bonds for such purposes. This disposes of questions One and Two.

Section 118 of Chapter 9710, *supra,* provides as follows:

"Sec. 118. The City Commission shall have the power to provide by ordinance for the issuance of negotiable bonds of said City of Clearwater for municipal improvements of every nature and kind; and for funding or refunding any pre-existing bonded indebtedness; but negotiable bonds of said City shall never be issued in a greater amount than twenty per cent. (20%) of the assessed valuation of the real and personal property of said City, and then not until previously authorized by a majority vote of the qualified electors of said City, who own at the time of said election, real estate in said City, at a regular or special election called and held for such purpose."

The Yacht Basin Revenue Certificates here under consideration are not the general obligations of the municipality and create no burden of taxation on the municipality and the payment thereof may not be enforced by a tax levy on any taxable property within the municipality.

It is provided in the authorizing ordinance and in the certificates:

"The City of Clearwater, in the County of Pinellas, a municipal corporation of the State of Florida, for value received, hereby promises to pay to bearer, or, if this certificate be registered, to the registered owner hereof, solely from the sinking fund provided therefor, as hereinafter set forth, and not otherwise, the principal sum of ONE THOUSAND DOLLARS ($1,000.00) on............1, 19...., and to pay

interest on said principal sum, solely from the sinking fund provided therefor, as hereinafter set forth, and not otherwise, from the date hereof at the rate of four per centum (4%) per annum, payable semi-annually on October 1 and April 1 in each year upon the presentation and surrender of the interest coupons attached hereto as they severally become due, until the maturity of this certificate. Both the principal of and interest on this certificate are payable at the office of the City Treasurer, in the City of Clearwater, State of Florida, or at the option of the holder, at The Chemical Bank & Trust Company, New York City, New York, in such coin or currency as is, on the respective dates of payment thereof, legal tender for the payment of public and private debts.

"This Certificate is one of a duly authorized issue of Certificates, limited to an aggregate principal amount of $28,000.00 of like tenor and effect, except as to number and maturity is issued pursuant to and in full compliance with the Constitution and Statutes of the State of Florida, particularly the Charter of the City of Clearwater, and by virtue of an Ordinance entitled: 'An Ordinance Providing for the Construction of a Yacht Basin' and to Aid in Financing the Cost of Such Construction, Providing for the Issuance of $28,000.00 Revenue Certificates of the City of Clearwater, Florida, payable Solely from the Revenue Derived from said Yacht Basin' duly adopted by the City Commission of said City of Clearwater on the 26th day of August, 1938, and said Ordinance is hereby referred to, and, as to all of its terms and provisions, is made a part of this Certificate.

"This Certificate and the issue of which it is one are issued to aid in financing the cost of construction of a Yacht Basin, and are payable only from a sinking fund in which there shall be set aside annually, in approximately equal

monthly installments, out of the revenues and income derived from the operation of said Yacht Basin, after provision for the payment of all operating costs, such sums as shall be sufficient for the payment of the interest on and principal of said Certificates as the same respectively shall become due, and this Certificate together with all other certificates of the issue of which this Certificate is one, and the interest thereon, are secured by a pledge of and exclusive first lien upon all revenues set aside in said sinking fund, all as in said Ordinance provided. This Certificate and the interest thereon are not payable from nor are a charge upon any funds other than the revenues pledged to the payment thereof and shall not impose any tax liability upon any real or personal property in the City of Clearwater, nor constitute a debt against said City."

This is to be distinguished from the case made in Boykin v. Town of River Junction, 121 Fla. 902, 164 Sou. 555, in that in this case there is no attempt to place or create a lien on the physical properties nor has nay contingent franchise been granted. And in this case, although neither a general obligation, a lien on the physical properties, nor a contingent franchise has been granted, the provisions of Amended Section 6 of Article IX of the Constitution has been complied with.

The case of Kathleen Citrus Land Co. v. City of Lakeland, 124 Fla. 659, 169 Sou. 356, is likewise, for the same reasons above stated, distinguishable from the case at bar.

The rule of law enunciated in State v. City of Miami, 113 Fla. 280, 152 Sou. 6, is applicable here. In that case the Court, speaking through the late Mr. Chief Justice DAVIS, said:

"There is respectable authority (perhaps the weight of authority is to this effect) which affirms the proposition that municipal obligations, which are not payable from

taxes, but are provided to be payable solely from the revenues of an independent revenue producing asset or utility, do not constitute a debt of the municipality, within the prohibition of a constitutional or statutory debt limit." (See authorities cited following this enunciation.)

And further in the opinion it is said:

"Other cases limit the doctrine to those obligations only which do not undertake to pledge any of the existing revenues of a plant or other revenue producing asset *in esse,* while some of the cases held that the foregoing distinction is not applicable to obligations for extensions and additions, when made payable from the gross income of the enlarged plant or other revenue producing asset of the municipality." (See authorities cited following this enunciation.)

And further it was held:

"A third group of cases refuses to acknowledge any such distinction at all. The last mentioned group holds that to permit a city to *borrow* any money under a contractual device for its repayment with interest, even though it is expressly provided therein that the municipality shall not be liable generally for its repayment, but that the lender shall look solely to pledged municipal property or assets, or the income thereof, as security, in effect annuls the intended constitutional or statutory restriction on municipal improvidence, and is therefore void as an indirect attempt to strike down an intended safeguard against municipal profligacy. These cases regard any form of revenue anticipation borrowing as an unlawful attempt to circumvent the debt or borrowing restrictions of the statute or constitution, which are to be regarded as intended for the purpose of forbidding imposition of additional burdens on the taxpayers, either by diverting funds which must be replenished by other funds raised by taxation if so used, or otherwise made up out of moneys which would be available for re-

ducing taxation if not diverted." (See authorities cited following this enunciation.)

It was further said, in the same opinion:

"It has been affirmatively made to appear in this case that the Water Revenue Certificates, as validated, do not directly, indirectly or contingently, obligate the City to levy or to collect any form of taxation whatever therefor, or to make payments thereon from city taxation, or from general corporate funds, or to assume any obligation whatever except to impose a sufficient charge for the water service rendered to patrons and customers by the use of particularly designated property, and to apply to the payment of such certificates the net proceeds from the operation of the particular property which is owned by the city in its proprietary capacity, and which is to be repaired and improved by the use of the proceeds of the sale of the certificates, so as to more efficiently serve the public purpose designed, pursuant to the requirements of the contract under which the property was acquired by the city for the purpose of rendering, for a proper charge, an indispensable public service to the inhabitants of the city.

"And as the Water Revenue Certificates are to be issued for a corporate purpose and are specially made payable solely out of net revenues derived only from the operation of particular proprietary property, which to meet immediate and imperative public needs, is to be repaired and improved by the use of the money received from the certificates, and no other obligation or liability, express or implied, direct or indirect or contingent or otherwise is assumed or can legally be assumed by or imposed upon the city by the certificates or by the statute or the resolutions or other proceedings upon which the certificates are predicated, the Water Revenue Certificates involved herein, do not directly or indirectly violate the terms or intendments of Section 6

of Article IX of the Constitution of Florida, as amended in 1930, which organic provisions impose limitations upon the power of counties, municipalities and districts in this State to issue bonds.

"So the substance of what we decide in this case is that the contemplated certificates of indebtedness issued, or to be issued, by the City of Miami, which are payable out of the income of proprietary municipal property possessing a fixed earning capacity, to-wit: a municipal water plant, which said property is to be repaired, reconstructed and improved for the necessary preservation of the facilities of the plant, as well as the incidental protection of the public health and public safety, out of the proceeds derived from the sale of such certificates, and which certificates, according to their express phraseology, and according to the statutes and ordinances under which they are authorized and issued, are payable as to both principal and interest solely out of a special fund to be created and established out of the net earnings derived from the operation of said municipal water plant, which constitutes a net revenue derived and to be derived solely from the sale of water, and which certificates do not create, nor purport to create, a general obligation upon or debt against the city, and cannot be enforced or collected by levy of an *ad valorem,* or other municipally imposed tax upon property or business transactions situated, or carried on within said City of Miami, or make a charge of any kind upon the property of taxpayers, or upon the tax resource of the City of Miami, are not municipal bonds within the purview of Section 6 of Article IX of the Constitution of the State of Florida, as amended in 1930, nor are they 'debts' of the city within the purview of the city's statutory debt limit."

The question as to whether or not the certificates here involved must be authorized by a freeholders' election is

not involved because such freeholders' election was held as shown by the record.

It is argued in briefs filed here that the contemplated facility is a new creation and is therefore not within the purview of the opinion and judgment of this Court in the case of State v. City of Miami, 113 Fla. 280, 152 Sou. 6. If the argument is tenable, and we do not hold that it is, it is not applicable because this is not an attempt to obtain new property, as has been argued, but an effort to improve the property already owned so that it will produce an income and be more easily accessible to the public. It is established by the testimony of the mayor that the work will consist of construction of a steel retaining wall and wooden slips on land now held by the municipality in fee simple, thus making available for the use of boats a natural basin requiring a "very small" amount of dredging. It appears that the so-called construction of a yacht basin is really the erection of a retaining wall or breakwater as an improvement to an anchorage provided by nature. To allow the issuance of revenue certificates payable from the anticipated income of the project seems authorized as the maintenance of an existing property.

The opinion and judgment in the case of State v. City of Miami, *supra,* is authority for holding that the debt limitation does not apply to obligations of this sort.

In 6 McQuillan on Corporations, 2 Ed., page 52, Sec 2, 389, it is said:

"It has been generally held and the rule is that the debt limitation does not apply to a debt that is a lien upon specific property and is not chargeable to the general fund."

The author cites Oppenheim v. Florence, 229 Ala. 50, 155 Sou. 859; State, *ex rel.,* v. State Board of Education, 97 Mont. 121, 33 Pac. (2) 516, 524; Fjildsted v. Ogden

City, 83 Utah 278, 28 Pac. (2) 144, 150; Uhler v. Olympia, 87 Wash. 1, 151 Pac. 117.

To like effect see 44 C. J. 1131, Municipal Corporations, Sec. 4064, and also 19 R. C. L. 985.

So in this case we hold that the statute limiting the amount of bonded indebtedness which may be incurred by the City of Clearwater is not applicable to the certificates here under consideration.

For the reasons stated, the decree of validation is affirmed.

So ordered.

Affirmed.

TERRELL, C. J., and THOMAS, J., concur.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur in the opinion and judgment.