**E. J. ZINNEN v. CITY OF FORT LAUDERDALE, a municipal corporation of Florida, in the County of Broward, State of Florida.**

32 So. (2nd) 162 June Term, 1947
October 3, 1947 En Banc

*S. O. O'Bryan, Jr.,* for appellant.

*Julian E. Ross,* for appellee.

*C. A. Hiaasen,* as amicus curiae.

TERRELL, J.:

This appeal is from a final decree validating Municipal Recreation Revenue Bonds proposed by the City of Fort Lauderdale as provided by Chapter 24514, Special Acts of 1947. The appellant, a citizen and taxpayer, was permitted to intervene and resist, issuance of the bonds. No objection is offered to the resolution or other proceedings incident to their issue.

It is first contended that the purchase of property and the construction of recreational facilities thereon as contem-

plated by the bond issue under attack is not a municipal purpose.

Chapter 24514, Special Acts of 1947 (Charter of the City of Fort Lauderdale) authorizes the city to acquire real estate and to construct recreational facilities thereon. The act further declares such recreational facilities to be comprehended within the meaning of a municipal purpose and this court has repeatedly held that the legislature may determine what constitutes a municipal purpose. The following cases elaborate on the modern concept of municipal purpose and conclude this question, contrary to appellant's contention. Saunders v. City of Jacksonville, 157 Fla. 253, 25 So. (2nd) 648; State v. City of Tallahassee, 142 Fla. 476, 195 So. 402; City of Fernandina v. State, 143 Fla. 402, 197 So. 454.

It is next contended that the proposed municipal recreation bonds are invalid because they were for new construction rather than extension of an existing facility and were not approved by a vote of the freeholders as required by Section 6, Article IX of the Constitution.

The petition for validation reveals that the City of Fort Lauderdale operates public beaches, a bathing casino and other recreational facilities, including municipal docks, that the proposed recreational facilities are nothing more than extensions and additions to the facilities already owned and being conducted and that their primary purpose is more efficiently to answer the needs of the city for such facilities. The petition for validation also shows that the bonds brought in question are to be retired and the interest thereon is to be paid exclusively from revenues derived from the recreational facilities. They are not secured by mortgage or lien of any character on the facility to be enlarged or acquired. We therefore conclude that an approving vote of the freeholders was not a necessary prerequisite to their issue. State v. City of Clearwater, 135 Fla. 148, 184 So. 790; State v. City of Key West, 153 Fla. 226, 14 So. (2nd) 707; Kinsey v. Walton County Bridge Authority, 136 Fla. 204, 186 So. 418; Brash v. State Tuberculosis Board, 124 Fla. 652, 196 So. 218; Hopkins v. Baldwin, 123 Fla. 649, 167 So. 677. Many other cases might he included in this category. Some of them approved

bond issues for extensions of existing facilities while others approved bond issues for new facilities. If they are to be paid for exclusively from income from the facility, it is not material whether they are new or were additions to facilities already owned and operated.

It is last contended that the municipal Recreation Bonds drawn in question must be approved by a vote of the free-holders as required by Section 6, Article IX of the Constitution, because they ultimately impose an obligation on the taxing power of the city.

There is no merit to this contention. The city charter authorizes the city to issue revenue bonds or certificates for municipal purposes and the resolution authorizing the bonds in question provides that they shall not be general obligations of the city. Neither the resolution nor the bonds themselves pledge the taxing power of the city and they are not of the nature of general obligation bonds that bind the taxing power of the city. The resolution providing for their issue also provides for the creation of the "Municipal Recreation Revenue Bond Fund" and then requires that the bonds authorized shall be payable from revenues to be derived from the operation of the recreational facilities. Each bond on its face provides that "this bond and interest thereon are payable solely from the revenue pledged to the payment thereof and the holder hereof and of the interest coupon attached hereto shall have no recourse to the power of taxation."

The resolution otherwise provides for remedies to the bond holders in case of default on the bonds, but these remedies in no way involve the taxing power of the city. This court is committed to the doctrine that where revenue bonds or revenue certificates are payable solely from income derived from the facility to be enlarged, acquired or constructed from the proceeds of such bonds, and in which there was no pledging of the taxing power and wherein it is in terms provided that no taxing power of the municipality should ever be resorted to for their payment, and which bonds are not secured directly or indirectly by mortgage or lien of any kind on the utility to be enlarged or acquired, they may be issued without an approving vote of the freeholders. State v. City

of Miami, 157 Fla. 726, 27 So. (2nd) 118; State vs. City of Jacksonville, 159 Fla. 501, 31 So. (2nd) 385.

We therefore conclude that the final decree appealed from was in all respects correct and is hereby affirmed.

Affirmed.

THOMAS, C. J., BUFORD, CHAPMAN, SEBRING and BARNS, JJ., concur.

ADAMS, J., dissents.

ADAMS, J., dissenting:

The basis for my dissent is upon a question presented and argued but not treated in the opinion. By the initial resolution the city is obligated to operate the park. Should it prove a losing venture obviously the operation would result in a burden to be borne by taxes raised by the city.

Furthermore this undertaking is new and not basically essential for the general welfare of the city.