The author of this dissent also dissented in the case of Zinnen v. City of Fort Lauderdale, Fla., 32 So.2d 162. That opinion now binds the writer, as well as all others, in regard to the matters treated therein and no further objection is now noted insofar as was concluded therein.
However, we do have presented here for the first time the question of whether the pledge of "utilities service taxes" may be made without a compliance with Section 6, Article 9 of the Florida Constitution reading:
"The Legislature shall have power to provide for issuing State bonds only for the purpose of repelling invasion or suppressing insurrection, and the Counties, Districts or Municipalities of the State of Florida shall have power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such Counties, Districts, or Municipalities shall participate, to be held in the manner to be prescribed by law; but the provisions of this Act shall not apply to the refunding of bonds issued exclusively for the purpose of refunding of the bonds or the interest thereon of such Counties, Districts or Municipalities."
The Constitution speaks of bonds. It is not limited to that class of bonds secured by ad valorem taxation. They come under our definition of bonds in the case of Leon County v. State,122 Fla. 505, 165 So. 666.
It is stated in the resolution that the issuance of these bonds is essential for the public health and recreation of the citizens in the City. No excuse is given for not complying with the Constitution by procuring the approval of the qualified electors despite the necessity to procure facilities for public health and recreation. These negotiable instruments are characterized by the City as bonds. They have every attribute of bonds. The sovereign taxing power is pledged to them.
Heretofore when revenue certificates were issued for self-liquidating projects the citizen or person paying the charge could exercise a choice of using the service and paying or declining to do so — such as living in a dormitory at one of our state institutions. Such is not the case here. Each user of the public utility is taxed to pay these bonds. It is strange indeed that these bonds are so vital and yet the people who must pay them are not given the opportunity to pass upon them as provided in their Constitution. A case like this is a reminder of another case now before this court where we are urged to apply equitable principles and reduce the bondholders' recovery to the prices paid for them on a depressed market rather than par. The situation bids us pause and be sure that the Constitutional amendment, drafted to curb the abuse of incurring public debt, has been complied with.
The writer's conclusion is that the bonds should not be validated without an approval vote as provided by the Constitution.
BARNS and BROWN, JJ., concur.