This is a suit for recovery on a written contract of lease. Plaintiff, the lessor of the property, claims from the defendant $126.08 which is made up of the following items:
Rent for the month of September, 1942 ................. $35.00 Damage to leased premises caused by defendant .......... 66.08 Attorneys fees ......................................... 25.00
The defendant resists any liability for the rent on the ground that plaintiff interfered with his peaceable possession of the premises during the continuance of the lease and denies that the property was damaged while it was being occupied by him.
After a trial in the lower court on these issues, there was judgment in favor of defendant dismissing plaintiff's suit. Wherefore this appeal.
A reading of the record reveals that, while there is some conflict in the testimony of the opposing litigants and their *Page 279 
witnesses, the basic facts of the case are not in dispute. We find the facts to be as follows:
The plaintiff, Mrs. Althea B. Jacobs, leased to the defendant, Oscar Kagan, the premises No. 4225 So. Johnson Street in the city of New Orleans by written contract for one year, beginning on October 1, 1941, and ending on September 30, 1942, in consideration of a monthly rental of $35. All of the rent due under this contract was paid by the defendant up to and including the month of August, 1942. During the month of July 1942, the defendant, having purchased a home of his own and being desirous of moving into his new house as soon as possible, notified the plaintiff of this fact and sought to obtain her permission to vacate the leased premises. Plaintiff agreed to this, on condition that defendant would pay all rent falling due under the lease, and also agreed to assist the defendant in obtaining a sub-tenant for the premises for the remainder of the term of the lease.
In accordance with this understanding, the rent for the month of August was paid to plaintiff on the first of that month and defendant moved from the premises about a week later. A few days after the defendant moved, he delivered the key to the front door of the house to the plaintiff, who, after inspecting the premises and discovering that certain damage had been done to the walls of the interior, entered into a contract to have this damage repaired for the sum of $66.08. About a week subsequent to the date upon which the key to the house was delivered by the defendant to the plaintiff, the defendant telephoned the plaintiff and requested that the key be returned to him. In response, plaintiff told the defendant that she would let him talk to her husband. Thereupon, according to defendant's testimony, plaintiff's husband came to the telephone and informed him that he would have to pay the September rent to which defendant responded that, under those circumstances, he was entitled to have the key. To this, plaintiff's husband replied: "No, you can't have the key because we are making improvements in the house." Conversely, plaintiff's husband testifies that, when the defendant phoned to inquire about the return of the key, he asked defendant why he wanted it. Defendant responded that he had use for it; that he did not wish to tell him the reason and that he thereupon informed defendant that, unless the latter told him the reason why he wanted the key, it would not be returned.
The question posed by the foregoing evidence is whether the defendant is liable for the September rent. Plaintiff, in maintaining that there is liability, relies strongly on the decision of Succession of Marx v. Schornstein, La.App., 169 So. 93. Contra, defendant says that plaintiff's act in refusing to give him access to the property, after he had vacated, is clearly a violation of Article 2692 of the Civil Code in that plaintiff has failed to maintain him in peaceable possession of the premises and also a violation of Article 2698, which enjoins the lessor from making alterations to the premises during the continuance of the lease.
We think that the trial judge correctly found that the defendant should prevail on this point. It is clear that the verbal agreement between the parties contemplated that the defendant should have free access to the property at all times for the purpose of securing a sub-tenant. This was made quite impossible by the attitude taken by plaintiff's husband, in demanding that defendant inform him of the reason why he wished to have the key to the leased premises. Obviously, if the defendant was to be liable for the rent for the whole term of the lease, he was entitled to the undisturbed possession of the premises and, at all events, in view of the verbal understanding of the parties, to the unrestricted right of entry for the purpose of showing the property to prospective tenants. Moreover, it is manifest to us that the act of the plaintiff, in causing repairs to be made to the property during the continuance of the lease, interfered with the peaceable possession of the defendant in violation of article 2692 of the Civil Code. See Pelletier v. Sutter, 10 La.App. 662, 121 So. 364 and Wood v. Monteleone,118 La. 1005, 43 So. 657.
The case of Succession of Marx v. Schornstein, supra [169 So. 94], depended upon by plaintiff, is clearly distinguishable from this one. There, the lease provided that the lessor "shall at all times have the right to enter the leased premises in order to make repairs, improvements, or alterations, lessee assenting thereto." We held that the lessee, who had moved from the premises, could not complain of the lessor's entry therein for the purpose of making repairs or alterations since, under the stipulation contained in the lease, the *Page 280 
lessor had the right, within reasonable bounds, to enter the leased premises to make such repairs and alterations even though the lessee was actually occupying the property.
In the instant case, the clause in the lease provides that "Lessor or his agent or workmen shall have the right to enter the premises for the purpose of making repairs necessary for thepreservation of the property." (Italics ours.) The meaning of this provision is clear. It contemplates that the lessor will be permitted to make only such repairs which save the building from being rendered uninhabitable, such as leaks in the roof or other defects which tend to destroy its usefulness. The repairs made by the plaintiff in this case do not fall within that category. They were made to rectify damage which had been done to the walls and woodwork in the interior of the house, allegedly by the child of the defendant, who, plaintiff charges, marked the walls and woodwork with colored crayons. These repairs were obviously made for plaintiff's exclusive benefit in order to obtain a new tenant for the premises on October 1st when defendant's lease terminated. Plaintiff's husband testified that it took the workmen approximately three weeks to complete their work; the contractor, who did the work, says that the job was completed in about two weeks. In either event, it is plain that, even though plaintiff had consented to turn over the keys to the defendant, the latter would have been unable to secure a subtenant while the repair work was being done. The prosecution of this work appears to us to be a breach of the verbal agreement whereby defendant was given the right to obtain a subtenant for the short period during which the lease had to run.
However, we think that the judge of the lower court erred in refusing to recognize plaintiff's claim for damage done to the leased premises by the defendant. Plaintiff, her husband and her real estate agent all swear that, at the time the defendant went into possession in October 1941, the premises were in excellent condition and that plaintiff had spent approximately $300 in decorating and painting the interior and exterior of the house about a year prior thereto. And plaintiff, her husband and the contractor, one Edward Norman, testify that, after defendant and his family moved out in August 1942, the walls and woodwork of the house had been marked and written on with crayolas, evidently by defendant's seven year old child. The only testimony to offset the statements of plaintiff's witnesses is that of the defendant and his wife who say that the premises were very dirty and in bad condition at the time they moved into the house. No attempt was made by them to explain the presence of the crayon marks on the wall.
We do not think that this evidence is sufficient to overcome the proof tendered by the plaintiff. The bill for making the repairs amounted to $66.08, which seems to be reasonable, and the lease provides for the assessment of a minimum of $25 attorney's fees in the event suit is brought on the contract of lease. Accordingly, there will be judgment in plaintiff's favor for those amounts.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that there be judgment herein in favor of plaintiff, Mrs. Althea B. Jacobs and against defendant, Oscar Kagan, for the full sum of $91.08, with legal interest on $66.08 from date of judicial demand, and all costs.
Reversed.