R. C. GARDNER v. A. E. FULLER, as Director of Finance of the City of Miami, THE CITY OF MIAMI, a municipal corporation of the State of Florida; A. B. CURRY, et al., as members of the Miami Port Authority.

22 So. (2nd) 150             January Term, 1945

May 1, 1945                    En Banc

*Abe Aronovitz,* for appellant.

*Hoffman & Durant* and *J. W. Watson, Jr.,* for appellees.

834

BUFORD, J.:

Appellant filed his bill of complaint in the Circuit Court to enjoin the defendants from functioning under the provisions of Chapter 22303, Special Acts of 1943, the title to which Act is:

"An Act Creating the Greater Miami Port Authority; Authorizing Said Authority to Construct, Acquire, Establish, Improve, Extend, Enlarge, Reconstruct, Equip, Maintain, Repair and Operate, Either within or without or Partly within and Partly without the Territorial Boundaries of the City of Miami, Florida, Projects As Defined in Said Act, Consisting of Harbor, Port and Shipping Facilities of All Kinds, Airport Facilities of All Kinds for Land and Sea Planes, Exhibition Halls and Markets, Administration Buildings, Tunnels, Causeways (Including the Causeway Now under Construction by Dade County over Biscayne Bay) and Bridges, or any Combination of Two or More Such Projects; Providing for the Transfer to the Jurisdiction, Control and Supervision of the Authority of All Existing Projects Owned or Controlled by the City of Miami, Florida; Prescribing the Powers and Duties of the City Commission of Said City and of Said Authority; Authorizing the Issuance by Said Authority of Revenue Bonds of the City of Miami, Florida, Payable Solely from Revenues, to Pay All or Part of the Cost of the Acquisition, Construction, Extension or Enlargement of a Project or Projects; Authorizing the Issuance of Revenue Refunding Bonds of Said City, and the Issuance of a Single Issue of Revenue Bonds of Said City for the Combined Purpose of (1) Paying All or Part of the Cost of Acquiring, Constructing, Extending or Enlarging a Project or Projects and (2) Refunding Any Revenue Bonds or Revenue Certificates Which Shall Then Be Outstanding and Shall Be Payable from the Revenues of Any Existing Project or Projects: Providing That No Debt of The City of Miami, Florida, Shall be Incurred in the Exercise of Any of the Powers Granted By This Act; Authorizing Said Authority to Fix, Regulate and Collect Rates and Charges for the Services and Facilities Furnished By Any Project under Its Control, and to Pledge the Revenues of Any Such Project to the Payment of Such Bonds; Providing for the Execution of a Trust

Agreement Securing the Payment of Such Bonds without Mortgaging or Encumbering Any Such Project; and Exempting All Such Bonds and Such Projects from Taxation and Providing for a Referendum Election."

The bill of complaint was dismissed and plaintiff appealed.

Appellant states the question involved as follows:

"Did the Court err in dismissing the bill of complaint which alleges the illegal expenditure of public funds under authority granted by an illegal legislative Act, known as House Bill No. 652, and which creates the Greater Miami Port Authority?"

Under this question it is contended that the Act violates Section 1 of Article III, Section 16 of Article III, Section 21 of Article III, Section 6 of Article IX and Section 7 of Article IX of our Constitution.

Neither of these contentions is tenable.

Section 1 of Article III is not violated because the Act is a complete legislative declaration to become operative upon the happening of a particular event. See State v. Sammons, 62 Fla. 303, 57 So. 196; State v. A.C.L. Ry. Co. 56 Fla. 617, 47 So. 969.

Section 16 of Article III is not violated because the Act embraces but one subject and *matter properly connected therewith*. See Buford, Attorney General, v. Daniel, et al., 87 Fla. 270, 99 So. 804, and cases there cited. State v. Bryan, 50 Fla. 293, 39 So. 929.

Section 21 of Article III is not violated because the 1928 Amendment to our Constitution in this regard provides:

"Provided, however, no publication or any local or special law is required hereunder when such local or special law contains a provision to the effect that the same shall not become operative or effective until the same has been ratified or approved by a majority of the qualified electors participating in an election called in the territory affected by said special or local law."

The Act only affected the powers and jurisdiction of the City of Miami to be exercised by the City through the Port

Authority. No. property belonging to any other municipality, authority or agency was proposed to be vested in the Port Authority. The Port Authority was given no power of taxation and it is not authorized to acquire any property except in the name of the City of Miami. It is not authorized to pledge the taxing power of the Ctiy of Miami for any purpose.

Section 6 of Article IX is not violated because this Section as amended in 1930 only applies to bonds sought to be issued which pledge the taxing power or some other property or resource besides the net earnings of a particular utility which is to be benefitted by the fund. See State v. City of Tampa, 148 Fla. 6, 3 So. (2nd) 484, and cases there cited.

The Act confers no taxing power on the Port Authority and authorizes it to issue bonds or certificates payable solely from net revenues of the projects for the benefit of which suit bonds or certificates are issued.

Section 7 of Article IX is not violated because there is no authority in the Port Authority to levy or to pledge the proceeds of any tax whatever.

The Port Authority is merely a functionary (as distinguished from a department) of the City of Miami established to manage and control an important function of the municipal government of that City, with limited powers and with no authority to pledge the taxing power or the general credit of the City. In this regard it is only authorized to pledge the net earnings of the particular facility or utility to be acquired, benefitted, extended or constructed and involved in the transaction. This does not mean that the municipality through its proper officers may not acquire by other means facilities or utilities to be turned over to the management and control of the Port Authority, as to which we express no opinion, because such question is not involved here.

The decree is affirmed.

So ordered.

CHAPMAN, C. J., TERRELL, BROWN, THOMAS, ADAMS and SEBRING, JJ., concur.