**STATE OF FLORIDA AND THE TAXPAYERS, PROPERTY OWNERS AND CITIZENS OF SAID CITY OF MIAMI, INCLUDING NON-RESIDENTS OWNING PROPERTY OR SUBJECT TO TAXATION THEREIN, v. THE CITY OF MIAMI, a Municipal Corporation.**

27 So. (2nd) 118

July 16, 1946

June Term, 1946

En Banc

*Glenn C. Mincer* and *S. O. Carson,* for appellants.

*J. W. Watson, Jr., Sidney S. Hoehl* and *Masslich & Mitchell* (New York, N. Y.) for appellee.

BUFORD, J.:

The Legislature of Florida at its regular session in 1945 enacted Chapter 23407. The title of the Act defined the powers and duties conferred thereby on the City of Miami, a municipal corporation in Dade County, Florida, and is as follows:

"An Act Conferring Additional Powers Upon the City of Miami, a Municipal Corporation in Dade County, Florida, in Relation to the Collection, Treatment and disposal of Sewage, Including Industrial Wastes: Authorizing and Empowering the City to Construct, Improve, Extend, Enlarge, Reconstruct, Maintain, Equip, Repair and Operate Sewage Disposal Systems and Other Sewer Improvements: Prescribing the Powers and Duties of the City Commission and of the Water and Sewer Board of Said City in Connection With Such Construction and the Financing Thereof; Authorizing the Levy of Special Assessments upon property benefited by the Construction or Reconstruction of Such Other Sewer Improvements; Providing for Paying the Whole or a Part of the Cost of a

Sewage Disposal System or Systems, of extensions and Additions Thereto, and of Other Sewer Improvements, or Any One or More Thereof, by the Issuance of Either (1) General Obligation Bonds of the City Payable From Ad Valorem Taxes and the Proceeds of Sewer Service Charges or Special Assessments or Both, or (2) Sewer Revenue Bonds of the City Payable Solely from Sewer Service Charges or From Sewer Service Charges and Special Assessments; Providing for the Levy of a Sufficient Ad Valorem Tax for the Payment of General Obligation Bonds; Providing for the Imposition and Collection of Charges for Making Connections With the Sewer System of the City, for the Imposition and Collection of Rates, Fees and Charges for the Use of the Services and Facilities of Such Sewage Disposal System or Systems, for the Imposition and Collection of Rates, Fees and Charges for the Use of the Services and Facilities of Such Other Sewer Improvements, and for the Application of Such Revenues; Authorizing and Empowering the City to Require Connection With Sanitary Sewers Served or Which May Be served by Any Sewage Disposal System: Granting to the City Power to Acquire Necessary Real and Personal Property and to Exercise the Right of Eminent Domain; Giving the Consent of the State of Florida to the Use of All State Lands Lying Under Water Which are Necessary for the Accomplishment of the Purposes of This Act; Excepting from Taxes and Assessments Any Sewage Disposal System of the City; Authorizing the City to Accept grants and Contributions in Aid of the Purposes of This Act; Authorizing the Pledge of Surplus Water Revenues; Authorizing the Issuance of Sewer Revenue Refunding Bonds; Authorizing the Combination of the Water and Sewer Systems of the City for Financing Purposes and the Issuance of Water and Sewer Revenue Bonds; Prescribing the Powers and Duties of the City in Connection With the Foregoing and the Rights and Remedies of the Holders of Any Bonds Issued Pursuant to the Provisions of This Act; and Providing for a Referendum Election on This Act."

Pursuant to this enactment a special referendum election was held in the affected area and the provisions of the Act were adopted by a majority affirmative vote of those voting

in such election held on October 23rd, 1945. The act is referred to as the Sewer Financing Act.

Under authority of Sec. 4 of the Sewer Financing Act the Water and Sewer Board of the City of Miami, pursuant to a request and resolution passed and presented by the City Commission, caused surveys, investigations, studies, borings, maps, plans, drawings and estimates of costs and of revenues to be made, and prepared and submitted to the City Commission a full and comprehensive report setting forth the type of treatments and estimate of cost of a sewage disposal system, the construction of which was said to be admitted by the said Water and Sewer Board to be desirable and feasible for the City of Miami and which report, plans, etc., showed the proposed location of each and every integral part of the facilities proposed to be constructed and also setting forth the sewer improvements as defined in the Sewer Financing Act which the said Board deemed necessary to construct and maintain to protect the health of the inhabitants of the City, consisting of sanitary sewers and laterals, together with the location by terminal points and routes for each of such improvements, with a description thereof, by designating its material nature, character and size and estimate of the cost of its construction.

Thereafter, on March 13, 1946, under authority of the Sewer Financing Act, the City Commission, at a meeting duly held, passed and adopted Ordinance No. 3053 entitled:

"An Ordinance authorizing the construction and operation of a Sewage Disposal system for the City of Miami, Florida; authorizing the issuance, under the provisions of the Miami Sanitary Sewer Financing Act, of Sewer Revenue Bonds, payable solely from Sewer Service Charges and Surplus Water Revenues, to provide funds for paying all or part of the cost of such system; providing that such Sewer Revenue Bonds shall not constitute a debt of the City or a pledge of its faith and credit; requiring connections with sanitary sewers which will be served by such system; providing for the imposition and collection of rates, fees and charges for the use of the services and facilities of such system, and for the creation of certain special funds; pledging to the payment of the principal

of and the interest on such Sewer Revenue Bonds the net revenue of such system and, to the extent required, surplus water revenues available for such purpose; and setting forth the rights and remedies of the holders of such bonds."

This ordinance authorized the construction of the Sewage Disposal System therein described, together with all appurtenances, equipments, rights, easements and franchises relating thereto and all extensions, improvements, called collectively Sewage Disposal System, and authorized the issuance of sewer revenue bonds of the City of Miami designated "Sewer Revenue Bonds" in the aggregate principal amount of $10,600,000.00 for the purpose of paying all or a part of the cost of such sewage disposal system.

Prior to the adoption of this ordinance the City Commission had found and determined the estimated cost of the Sewage Disposal System for the payment of which the said bonds are to be issued, the estimated annual revenues of the Sewage Disposal System and the estimated annual cost of maintaining, repairing and operating the Sewage Disposal System and it was made to appear from such estimates that the annual revenues of the Sewage Disposal System will be sufficient to pay the cost of maintenance, repair and operation and interest on said bonds, together with the principal, as and when such interest and principal shall become due according to the terms thereof.

On February 26, 1946, the City Commission adopted its Resolution No. 19206 setting forth the preliminary schedule, fixing and classifying the proposed rates, fees and other charges for the use of and the service and facilities furnished or to be furnished by the Sewage Disposal System to be paid by the owner, tenant or occupant of each lot or parcel of land which may be connected with or use the Sewage Disposal System by or through any part of the sewer system of the City of Miami as defined in said Ordinance and fixing March 13, 1946, at 2:00 o'clock P. M. at the regular meeting place of said Commission in the City Hall, as the date, hour and place for a public hearing thereon and notice of such public hearing was duly advertised by publication in the Miami Herald, a newspaper published in the City of Miami, on a date at least ten

days before the date set for the hearing. A public hearing was had at the time and place mentioned in said notice and all persons prospective users of the Sewage Disposal System and owners, tenants or occupants of property served or to be served thereby, and all others interested, were given an opportunity to be heard concerning the proposed rates, fees and charges, and at such hearing Resolution No. 19277 was duly passed and adopted by the City Commission and thereby said preliminary schedule of rates, fees and charges, as modified and amended, was put into effect.

The City Commission, having thus determined to issue bonds in the sum of $10,600,000.00, proceeded to issue same under Ordinance No. 3053, supra, dating same April 1, 1946. The bonds, pursuant to the Resolution authorizing their issuance, pledge for the payment of and limit the pledge for such payment in the following language:

"This bond shall not be deemed to constitute a debt of the City or a pledge of the faith and credit of the City, but shall be payable solely from the special fund provided therefor from revenues and the City is not obligated to pay this bond except from such special fund. The issuance of this bond shall not directly or indirectly or contingently obligate the City to levy or to pledge any taxes whatever therefor or to make any appropriation for its payment except from such revenues.

"This bond is one of a duly authorized issue of sewer revenue bonds of the City known as its 'Sewer Revenue Bonds' (herein called the 'bonds'), issued or to be issued to provide funds for paying all or a part of the cost of a sewage disposal system for the City (such system, together with all improvements, renewals and replacements thereof and extensions and additions thereto, being herein called the "sewage disposal system,") and all of the bonds are issued or are to be issued under and pursuant to an ordinance (herein called the 'Ordinance') duly adopted by the Commission of the City of Miami on March 13, 1946, reference to which Ordinance is hereby made for a description of the fund charged with and pledged to the payment of the interest on and the principal of the bonds, the nature and extent of the security, the terms and

conditions on which bonds are or may be issued, and a statement of the rights, duties and obligations of the City and of the rights of the holders of the bonds, to all the provisions of which Ordinance the holder hereof by the acceptance of this bond assents.

"The holder of this bond shall have no right to enforce the provisions of the Ordinance or to institute action to enforce the covenants therein, or to take any action with respect to any event of default under the Ordinance, or to institute, appear in or defend any suit or other proceeding with respect thereto, except as provided in the Ordinance.

"To the extent permitted by the Ordinance, modifications or alterations of the Ordinance or of any ordinance supplemental thereto may be made with the consent of the holders of at least seventy-five per centum (75%) in principal amount of the bonds then outstanding.

"In certain events, on the conditions, in the manner and with the effects set forth in the Ordinance, the principal of all the bonds then outstanding may become or may be declared due and payable before the stated maturities thereof, together with the interest accrued thereon.

"This bond is issued and the Ordinance was adopted under and pursuant to the Constitution and laws of the State of Florida, particularly the Miami Sanitary Sewer Financing Act. Chapter 23407, Special Laws of Florida, 1945, (herein called the Sewer Financing Act), which Ordinance in accordance with and as required by the Sewer Financing Act, provides for the fixing and collecting by the City of rates, fees and other charges for the use of, and for the services and facilities furnished or to be furnished by, the sewage disposal system which shall be sufficient at all times, with other funds available for such purposes, (a) to pay the cost of maintaining, repairing and operating the sewage disposal system, including reserves for such purpose and for replacements and depreciation and necessary extensions (b) to pay the principal of and the interest on the bonds as the same shall become due and reserves therefor, and (c) to provide a margin of safety for making such payments. The Ordinance also provides for the creation of a special fund designated 'Sewer

Revenue Bonds Sinking Fund' and for the payment into said special funds of all revenues of the sewage disposal system, over and above such cost of maintenance, repair and operation, and, to the extent required, revenues of the waterworks system of the City available for such purpose, to pay the principal of and the interest on the bonds as the same become due and payable and to create a reserve therefor, which special fund is pledged to and charged with the payment of the principal of and the interest on the bonds."

On May 10, 1946, the City of Miami filed its petition for validation of the bonds. Notice and order to show cause were duly issued and served. The State's Attorney filed his answer. Proof of publication and notice of order to show cause was filed, testimony was taken and the Chancellor entered his decree of validation of June 4, 1946. On June 5th, 1946, appeal was taken to this Court.

The court on final hearing, determined that it had jurisdiction of the cause and of the parties. The Chancellor found the facts to be substantially as we have hereinbefore stated and thereupon found his conclusions of law based upon those facts as follows:

"(1) That the Sewer Financing Act fully authorized the issuance of said $10,600,000.00 Sewer Revenue Bonds of the City of Miami in the form and manner provided by said Ordinance No. 3053.

"(2) That said Ordinance No. 3053 was properly adopted by the Commission of the City of Miami and is sufficient in form and in substance to authorize the issuance of said Sewer Revenue Bonds.

"(3) That the Sewer Financing Act was duly approved by a majority of the qualified voters of the City of Miami voting at a special election held in accordance with the requirements of Section 20 of said Act, and that said Act thereupon became and is now effective as a law of the State of Florida.

"(4) That said Sewer Revenue Bonds will not be bonds of the City of Miami in the constitutional sense or within the contemplation of the provisions of Section 6 of Article IX of the Constitution of the State of Florida, as amended.

"(5) That the charging and collecting of rates, fees and other charges for the use of the Sewage Disposal System based upon the rates charged for water furnished by the Waterworks System of the City of Miami, as provided by said Ordinance No. 3053 and said Resolution No. 19277, as a proper, fair and equitable method of charging for such use of the Sewage Disposal System, and does not violate any provision of the Constitution of the State of Florida, or any rights thereunder.

"(6) That neither the provisions of Section 10 of the Sewer Financing Act, nor the provisions of that portion of Section 501 of said Ordinance No. 3053 under the heading "Collection of Sewer Service Charges," nor that portion of Section 501 of said Ordinance No. 3053 which requires the owner, tenant or occupant of each lot or parcel of land within the City which abuts upon a street or other public way containing a sanitary sewer served or which may be served by the Sewage Disposal System and upon which lot or parcel a building shall have been constructed for residential, commercial or industrial use, to connect such building with such sanitary sewer and to cease the use of any other method for the disposal of sewage, sewage waste or other polluting matter, nor any other provision of said Act or Ordinance violate any provision of the Constitution of the State of Florida or any rights thereunder, nor will the enforcement of any of said provisions or portion of said Act or Ordinance deprive any person of his property without due process of law.

"(7) That neither Section 655.27 of the Florida Statutes, 1941, nor any other law of the State of Florida prohibits the Chase National Bank of the City of New York or any other bank or trust company in the Borough of Manhattan, City and State of New York, from exercising any of the powers or duties prescribed by said Ordinance or from acting in the capacity of Fiscal Agent thereunder.

"(8) That, as provided by said Ordinance and by the terms of the bonds themselves, the said $10,600,000.00 Sewer Revenue Bonds will not be deemed to constitute a debt of The City of Miami or a pledge of its faith and credit, but will be payable solely from the special fund provided therefor from

revenues, the City of Miami is not obligated to pay said bonds except from such special fund, and the issuance of said bonds will not directly or indirectly or contingently obligate The City of Miami to levy or to pledge any taxes whatever therefor or to make any appropriation for their payment except from such revenues."

The appellant presents five (5) questions, as follows:

"1. Will the issuance of $10,600,000 sewer revenue bonds of The City of Miami in the form and manner provided by Ordinance No. 3053, without the approval of a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in said city shall have participated, violate the provisions of an amended Section 6 of Article IX of the Constitution of Florida?

"2. Is the charging and collecting of rates, fees and other charges for the use of the sewage disposal system based upon the rates charged for water furnished by the waterworks system of the City of Miami, as provided by Ordinance No. 3053 and Resolution No. 19277, an improper, unfair and inequitable method of charging for such use of the sewage disposal system in violation of Sections 1 and 12 of the Declaration of Rights and Section 30 of Article XVI of the Constitution of Florida?

"3. Would the enforcement by the City of Miami of that portion of Section 501 of Ordinance No. 3053, under the heading 'Collection of Sewer Service Charges,' which provides for discontinuing the furnishing of water to premises for nonpayment of sewer service charges deprive persons of their property without due process of law, in violation of Section 12 of the Declaration of Rights of the Constitution of Florida?

"4. Would the enforcement by the City of Miami of that portion of Section 501 of Ordinance No. 3053, under the heading 'Miscellaneous Provisions,' which requires the owner, tenant, or occupant of each lot or parcel of land within the city which abuts upon a street or other public way containing a sanitary sewer served or which may be served by the sewage disposal system and upon which lot or parcel a building shall have been constructed for residential, commercial or industrial use, to connect such building with such sanitary sewer

and to cease the use of any other method for the disposal of sewage, sewage waste or other polluting matter, deprive persons of this property without due process of law, in violation of Section 12 of the Declaration of Rights of the Constitution of Florida?

"5. Does Ordinance No. 3053 violate Section 655.27 of the Florida Statutes, 1941, in naming as Fiscal Agent thereunder a National Banking Association not located in the State of Florida?"

The first question was answered by the court below in the negative. We have repeatedly held that amended Section 6 of Article IX of the Constitution of Florida is not violated by the issuance without an election of revenue bonds or revenue certificates of a municipaality which are payable solely from the revenues of the utility or facility to be enlarged, acquired or constructed from the proceeds of such bond certificates and in which there was no pledging of the taxing power of the municipality and in which bonds or certificates it was specifically provided that no taxing power of the municipality should ever be resorted to for their payment, and which bonds or certificates are not secured either directly or indirectly by mortgage or lien of any kind on the utility of facility to be enlarged, acquired or constructed. See State v. City of Miami, 113 Fla. 280, 152 Sou. 6; State v. City of Miami, 146 Fla. 266, 200 So. 535; State v. City of Tampa, 148 Fla. 6, 3 So. (2nd) 484; State v. Florida Keys Aqueduct Commission, 148 Fla. 485, 4 So. (2nd) 662; State v. City of Miami, 150 Fla. 270, 7 So. (2nd) 146; State v. City of Key West 153 Fla. 226, 14 So. (2nd) 707; Gardner v. Fuller, 155 Fla. 833, 22 Sou. (2nd) 150; State v. Caldwell, 156 Fla. 618, 23 So. (2nd) 855.

The revenue bonds or certificates here under consideration meet each and every of those tests and, therefore, on authority of the opinions and judgments in the cases, supra, we hold that the provisions of Section 6 of Article IX of the Florida Constitution are not violated by the issuance of these certificates. This is true because the imposition of fees for the use of the sewage disposal system is not an exercise of the taxing power, nor is it the levy of a special assessment. A sewer system is complementary to a water system. A sewer

system would be of no value without a water system and a water system would be entirely incomplete without a sewer system. So the principles of law which would apply to one system must likewise apply to the other. See City of Harrison v. Braswell, ___ Ark. ___, 194 S. W. (2nd) 12, Advance Sheet of June 4, 1946, opinion of Justices of the Supreme Court of New Hampshire filed November 8, 1944, reported in 39 Atl. (2nd) 765; Hunter v. Commissioners 71 Conn. 189, 41 Atl. 557; Robertson v. Zimmerman 268 N. Y., 52, 196 N. E. 740; New York St. Elec. and Gas Corporation v. City of Plattsburg, 281 N. Y. 450, 24 N. E. (2nd) 122; City of Edwardsville v. Jenkins, 376 Ill. 327, 33 N.E. (2nd) 598; Wolcott v. Village of Lombard, 387 Ill. 621, 57 N.E. (2nd) 351, 355; Grimm v. Village of Lewisville, 54 Ohio Appls. Report 270, 6 N.E. (2nd) 998; Anderson v. City of Fargo, 64 N. D. 178, 250 N. W. 794. This case is to be differentiated from the cases of State v. City of Tampa, 137 Fla. 29, 187 So. 604; and Boykin v. Town of River Junction, 121 Fla. 902, 164 So. 558; Kathleen Citrus Land Co. v. Lakeland, 124 Fla. 659, 169 So. 356, because of the patent difference in factual conditions.

The recent case of State v. City of Fort Myers, opinion filed December 14, 1945, reported 24 So. (2nd) 50, involved a combination of the City's sewage system and its water and gas plant. There it was sought to issue revenue certificates pledging the combined revenues of the three facilities to pay off revenue certificates issued to procure funds with which to extend, and improve the facilities. The validation of the certificates was affirmed.

Question Two was answered by the Chancellor in the negative. His findings of fact having been supported by the testimony, his conclusions as to the applicable law in this regard appear to have been without error.

The question here under consideration challenges the validity of the method used to determine the amount to be charged for the use of the sewage disposal system. The Sewer Financing Act, the Ordinance No. 3053 and Resolution No. 19277, all supra, authorized the charge to be made on the basis of the water used by the respective users of the sewage disposal system and it is contended that this is an improper,

unfair and inequitable method of charging for such use of the sewage disposal system, and violates Section 1 and 12 of the Declaration of Rights and Section 30 of Article XVI of the Constitution of Florida.

It has not been pointed out and we have been unable to discern wherein Sections 1 and 12 of the Declaration of Rights and Section 30 of Article XVI of the Constitution are violated. Nor has our attention been directed to any more proper, fairer, or more equitable method of arriving at the amount to be charged the user of the facility than that method which is here authorized.

The City of Philadelphia under an enabling Act authorizing that City to extend and improve its sewer system facilities for the treatment and disposal of its sewage, sought to issue bonds upon which to borrow certain monies and invest the same in such sewer system and facilities, which bonds were to be self-liquidating. The City first enacted an Ordinance levying a charge "upon each lot or parcel of land, building or premises having any connection with or being available for connection with the sewer system of the city or otherwise discharging sewage, industrial waste, water or other liquids or substances, either directly or indirectly, into the said sewer system, . . . at a rate equal to forty (40) cents for each one hundred (100) dollars of assessed valuation of such lot or parcel of land, building or premises,' with a proviso that the rate for charitable institutions and public and private schools shall be ten cents for each $100 of assessed valuation." See In Re Petition of the City of Philadelphia, 340 Pa. 17, 16 Atl. (2nd) 32. There the court said, in part:

"Being imposed without any regard whatever to the extent or value of the use made of the sewer facilities, or whether any use is made, the charge provided for by the ordinance is, in legal effect, undoubtedly a tax, and the obligation to pay it could be created only by the City's exercise of its general taxing power."

The court held that the charges as fixed in the ordinance constituted a tax and that such method could not obtain.

Thereafter, the City enacted another ordinance seeking to accomplish the same purpose which they sought originally.

This ordinance was before the Supreme Court of Pennsylvania in In Re City of Philadelphia, 21 Atl. (2nd) 876. That case the court said:

"The rate imposed by the present ordinance is a combination of two factors: (1) Three mills upon each dollar of the assessed valuation and (2) twenty-five per cent of the water rent. No serious objection has been raised to the second of these factors, since the amount of water which flows into a building is apt to be roughly proportional to what flows out as sewage. While there are exceptions without doubt, and while it might be more equitable to consider some further factors having to do with types of use, yet we cannot say that a measure of sewer use based upon water use is inequitable. It is City Council's duty to decide upon the rate, and we cannot set it aside unless it is clearly inequitable. The other factor, however—three mills upon each dollar of the assessed valuation—is a tax and has no relation to the use made of the sewers. It consequently falls under the ban of the Supreme Court's decision in the Hamilton case. The fact that it may be invalid as a tax because not imposed upon all properties does not made it valid as a sewer rent. It is measured by the value of the property served, without relation to the use of the sewers. It is, therefore, not in accord with the Act of 1935, supra, and is invalid. Without it, the sewer revenues are not sufficient. The city's petition must, therefore, be dismissed."

Then the City, with the same purpose still in view, passed another ordinance. See Cericke v. City of Philadelphia et al., 353 Pa. 60, 44 Atl. (2nd) 233. In this latter ordinance it is provided that the user shall pay an annual charge based upon the water consumption of the property served as measured by the charges for water supply for the then current calendar year.

The Supreme Court of Pennsylvania in the case last above cited upheld the validity of the ordinance which based the charges for use of the sewage system on the amount of water metered to the premises.

In the case of Houchins v. City of Beckley, _____ W. Va. _____, 32 S.E. 286, the Supreme Court of West Virginia upheld

charge for use of sewage system based on the amount of water used on the premises to which the sewer system was connected. The court said:

"We believe that it is fair for a levying body to assume that the quantity of water supplied to a user within a municipality indicates the extent to which the city's sewage system is made use of, either directly or indirectly, by the property owners."

See also City of Edwardsville v. Jenkins, supra.

Question Three is closely related to Question Two because it challenges the method provided for the enforcement of the charges for the use of the sewage system and, in effect, the Ordinance provides that if the charges for use of the sewage system are not paid the City may cut off the water to the premises for the non-payment of the charges for the use of the sewage system.

It is uniformly held that the City may cut off the water being furnished by the City to a consumer when such consumer fails to pay the water bill. See 67 C. J. 1266 and many cases cited therein, including Miami Water Co. v. City of Miami, 101 Fla. 506, 134 So. 592.

It appears to us that if no constitutional rights of the owner or occupant of premises are violated by shutting off the water for non-payment of the water bill, no such right will be violated by shutting off the water for non-payment of the bill for use of the sewage disposal system, the two services being so interlocked that neither can be effective without the other.

This was recognized in the case of Gatton v. City of Mansfield, 67 Ohio Appeals 210, 36 N. E. (2nd) 306.

It must also be observed that the Legislature has specifically authorized the City of Miami to use this means for the enforcement of the payment of the charges for the sewer service. See. Sec. 10, Chapter 23407, supra.

We are conscious of the fact that the Supreme Court of Alabama in the case of MacMahon v. Baumhauer, 234 Ala. 482, 175 So. 299, reached an opposite conclusion in discussing this question but we are not willing to follow that court in this regard because it appears to us that the Alabama court entirely overlooked the inter-dependence of the sewer system

on the water system and also that the two were so closely related that they could, as was said in the Gatton case, supra, be rightfully considered as one transaction. It is also true that it does not appear in the Alabama case that there had been legislative authority to combine the water system and the sewer system under one operation as there has been here.

Under Question Four the appellant contends that the requirements of Sec. 501 of Ordinance No. 3053 are unreasonable. The Chancellor found, as a matter of fact:

"The City of Miami has heretofore constructed certain sanitary sewer improvements within the City at a total cost of approximately $4,180,000, but the existing sewer system serves only approximately 33% of the area of the City and only approximately 50% of the inhabitants of the City, and the City has never constructed or installed any plant or facility for the treatment or disposal of sewage and for many years raw sewage has flowed directly, or has been pumped into the Miami River and Biscayne Bay. The present situation constitutes a serious menace to the health of the inhabitants of the City and the entire surrounding territory and is detrimental to the business and commercial interests of the City, and there is urgent and imperative need for the extension of the existing sewer system of the City, including the construction of additional sanitary sewers and laterals and the construction of a plant or system for the collection, treatment and disposal of sewage."

This finding was fully supported by the testimony at the hearing on the question of validating the certificates.

The reasonableness or unreasonableness of the provisions of the section complained of must depend largely, and may depend entirely, upon the character of the terrain of the area affected. The testimony in this regard was adequate to constitute substantial basis for the finding of fact, supra.

What may be considered an unreasonable requirement to be applied in a village located on the red clay hills of Leon County might be a regulation vitally necessary for the protection of the public health and welfare of the inhabitants of any city, the larger portion of the terrain of which is not more than 10 or 12 feet above sea level and a less distance above

the average water table. Private rights must always be subordinated to public rights and the public health is as sacred as any public right can be. So it is that it must be conceded that the City may use all reasonable means to protect the public health. To require the inhabitants of a city situated and located as Miami is shown by the evidence to be situated and located to connect their structures with the sewage disposal system furnished and maintained by the Municipality, the cost of which must be paid by the people of the Municipality, is not an unreasonable or unwarranted requirement when the Municipality has been granted the power to enact and enforce an Ordinance containing such requirement. See City of Leeds v. Avaran, 144 Ala. 427, 14 So. (2nd) 278 and Nourse v. City of Russellville, 257 Ky. 525, 78 S. W. (2nd) 761; Hutchinson v. Valdosta, 227 U. S. 303, 33 Sup, Ct. 290, 57 L. Ed. 520, and cases there cited. In this connection see also Clein v. Lee, 146 Fla. 306, 200 So. 693.

It is contended in Question Five that the provision of Ordinance No. 3053, supra, violates Sec. 655.27 Fla. Statutes 1941 (same F.S.A.), in that thereby a banking association not located in the State of Florida is named as the Fiscal Agent. There is no merit in this contention because Paragraph 8 of Sec. 655.27, supra, specifically contemplates that the inhibitions of the section shall not apply to banks and trust companies acting as fiscal agents for municipal corporations.

No error having been made to appear, the decree of validation is affirmed.

It is so ordered.

CHAPMAN, C. J., BROWN, THOMAS and ADAMS, JJ., concur.

TERRELL and SEBRING, JJ., agree to judgment.