61 So.2d 416 (1952)
STATE
v.
CITY OF ST. PETERSBURG.
Supreme Court of Florida, Division B.
November 18, 1952.
Archie Clement, Tarpon Springs, for appellant.
Lewis T. Wray, Harry I. Young, Frank D. McDevitt and Carroll R. Runyon, St. Petersburg, for appellee.
DREW, Justice.
From a decree validating certificates of the City of St. Petersburg in the aggregate principal amount of $1,500,000 designated "Sewer System Revenue Certificates, 1952 Series", the State of Florida, through its States Attorney, has appealed.
The appeal presents four propositions for determination. We will discuss them in the order presented.
*417 The first question presented is whether the City of St. Petersburg had the power to issue these certificates without first obtaining the approval of the freeholders at an election as provided by Section 6 of Article IX of the Florida Constitution, F.S.A.
The resolution authorizing the issuance of these certificates provides:
"Section 7. Certificates Payable Solely from Revenues. All Certificates shall be equally and ratably secured without priority of one over the other by reason of number, date, date of sale, date of execution or date of delivery, by a lien upon the net Revenues of the Sewer System in accordance with the provisions of this resolution. Such Certificates shall not constitute an indebtedness of the City of St. Petersburg or of any other political subdivision of the State of Florida, but shall be payable solely out of the Revenues of the Sewer System in the manner provided in this resolution. Nothing in this resolution shall be deemed to create any encumbrance, mortgage or other pledge of, or charge upon, any property or funds of the City other than the Revenues pledged for the payment of the Certificates as herein provided, nor to impose any tax liability upon any real or personal property in the City of St. Petersburg."
The appellant urges that the plan of financing the certificates is liable indirectly to create a pledge of the taxing power or impose an obligation coercive upon the city to exercise the power of taxation to meet the principal and interest upon said certificates in the event the net revenues derived from the sewer system should be insufficient. The record discloses, however, that, based upon past revenues derived from the system then in operation, the increased charges imposed by Ordinance No. 17.c (passed on first reading at the same meeting the ordinance providing for the issuance of the certificates herein involved was adopted) would be adequate to retire the principal and interest on such certificates as they matured. There was adequate and substantial evidence to support this contention in the lower court. See Town of Riviera Beach v. State, Fla., 53 So.2d 828.
We have repeatedly and consistently held that certificates of the kind here considered may be issued without an election as contemplated by Section 6, Article IX of the Florida Constitution. See State v. City of Miami, 157 Fla. 726, 27 So.2d 118, 124, where we held:
"We have repeatedly held that amended Section 6 of Article IX of the Constitution of Florida is not violated by the issuance without an election of revenue bonds or revenue certificates of a municipality which are payable solely from the revenues of the utility or facility to be enlarged acquired or constructed from the proceeds of such bond certificates and in which there was no pledging of the taxing power of the municipality and in which bonds or certificates it was specifically provided that no taxing power of the municipality should ever be resorted to for their payment, and which bonds or certificates are not secured either directly or indirectly by mortgage or lien of any kind on the utility or facility to be enlarged, acquired or constructed. See State v. City of Miami, 113 Fla. 280, 152 So. 6; State v. City of Miami, 146 Fla. 266, 200 So. 535; State v. City of Tampa, 148 Fla. 6, 3 So.2d 484; State v. Florida Keys Aqueduct Commission, 148 Fla. 485, 4 So.2d 662; State v. City of Miami, 150 Fla. 270, 7 So.2d 146; State v. City of Key West, 153 Fla. 226, 14 So.2d 707; Gardner v. Fuller, 155 Fla. 833, 22 So.2d 150; State ex rel. Watson v. Caldwell, 156 Fla. 618, 23 So.2d 855."
See also the more recent cases of Zinnen v. City of Fort Lauderdale, 159 Fla. 498, 32 So.2d 162; State v. City of Winter Park, 160 Fla. 330, 34 So.2d 740.
Appellants  in their second question  contend that Chapter 23523, Special Acts of 1945, as amended by Chapter 24875, Special Acts of 1947, requires the certificates here involved to be first authorized by a vote of the qualified electors of said city. It is true that the 1945 Act, as *418 amended, does contain such a provision, but Section 10 of that Act contains a provision that:
"* * * This Act is intended as a supplemental and additional grant of power and shall not supplant or repeal any existing powers of the City, but no limitations or prohibitions contained in any other Act shall prevent the complete exercise of the authority conferred hereby."
We hold that the 1945 Act, as amended, was intended to be and was (as stated in the Act) a grant of supplemental and additional power and did not supplant or repeal the then existing powers under the charter of the city, viz., Chapter 15505, Special Acts of 1931, under which these certificates are to be issued. Herbert v. City of Daytona Beach, 121 Fla. 212, 163 So. 565; Sullivan v. City of Tampa, 101 Fla. 298, 134 So. 211; State v. City of Hollywood, 131 Fla. 584, 179 So. 721.
In numerous cases we have upheld the issuance of revenue certificates under the city's charter authority, supra. See Blocker v. City of St. Petersburg, 125 Fla. 156, 157, 169 So. 647; State v. City of St. Petersburg, 135 Fla. 642, 185 So. 451; State v. City of St. Petersburg, 145 Fla. 206, 198 So. 837.
We now come to the question of whether the City of St. Petersburg has the power and authority under its charter and the laws of Florida to issue the certificates here under consideration and to impose and collect the service charges imposed to service such certificates.
In this connection the following are the pertinent provisions of the Charter of the City, Chapter 15505, Special Acts of 1931:
"Sec. 3. (ii) Sewerage, drainage, etc. To provide, erect, construct and maintain a sewerage system, and to compel owners of improved property to connect therewith; to regulate the use of all bridges, viaducts, drains, sewers and cess-pools within the City; to prohibit the use and maintenance of cess-pools in such portions of the City as it may designate, and it may compel the making of sewer connections in such portions and assess the cost thereof against the property so connected with the sewer; to require and compel railroad companies to make and keep open and in repair ditches, drains, sewers and culverts along the railroad tracks within the City; to compel the owner of low grounds, where water collects and becomes stagnant, to fill or drain such low places, and upon his default, to authorize such drainage or filling at the expense of such owner, and to make the expense thereof a lien upon the property filled or drained, and to make an assessment for the same to be on record."
"Sec. 3(jj) Collection and disposal of sewerage, offal, garbage, etc. To collect and dispose of sewage, offal, ashes, garbage, vegetable, animal and other refuse and to acquire or construct and to operate incinerators and other plants for the disposal and reduction of such matter."
In Section 3(e):
"Subject to the provisions of this Charter and of the Constitution of Florida, to contract debts, borrow money and make and issue evidences of indebtedness."
In Section 3(f):
"To expend the money of the City for all municipal purposes."
In Section 3(uu):
"To establish, impose and enforce water rates and rates and charges for gas, electricity and all other public utilities or other service or conveniences operated, rendered or furnished by the City * * *."
In Section 3(ee):
"To do all things whatsoever necessary or expedient for promoting or maintaining the general welfare, comfort, education, morals, peace, government, health, trade, commerce or industries of the City or its inhabitants."
On the authority of State v. City of St. Petersburg, 145 Fla. 206, 198 So. 837; State v. City of St. Petersburg, 135 Fla. 642, 185 So. 451; State v. Miami, 157 Fla. *419 726, 27 So.2d 118, and the charter provisions heretofore quoted, we hold that the city had ample power and authority to issue the certificates.
As to the right of the city to impose and collect the charges prescribed in Ordinance 17.c, supra, and pledged to the payment of the certificates in the Resolution authorizing the issuance of said certificates, we find ample authority therefor in Section 3(uu) of the city charter, supra, and Chapter 167.73, Florida Statutes, 1951, F.S.A. We have many times upheld charges and fees of the character here involved. Clein v. Lee, 146 Fla. 306, 200 So. 693; State v. City of Daytona Beach, 160 Fla. 204, 34 So.2d 309; Buchanan v. City of Miami, Fla., 49 So.2d 336; State v. City of Miami, 157 Fla. 726, 27 So.2d 118.
The final proposition presented for determination is the question of whether Ordinance 17.c, which increased the rates theretofore in existence for sewer charges, was the kind of Ordinance contemplated by Section 8, Subsection J, of Chapter 15505, Special Acts of 1931 (the Charter Act). This Section is as follows:
"(j) No ordinance except emergency ordinance shall go into effect before twenty (20) days from the time of its final passage. If during the twenty (20) days after final passage of an ordinance a petition signed by the qualified electors of the City equal in number to at least fifteen per cent (15%) of the average vote cast at the last preceding general election, protesting against the passage of such ordinance, be presented to the City Council, the same shall thereupon be suspended from going into operation, and it shall be the duty of the City Council to reconsider such ordinance, and if the same shall not be entirely repealed, the City Council shall submit the ordinance to the qualified electors of the City, either at the next general municipal election or at a special election to be called for the purpose, and such ordinance shall not go into effect unless a majority of the qualified electors voting on the same shall vote in favor thereof. The provisions of this Charter respecting the form and conditions of the petition as in the case of the initiative petition shall be substantially followed, with such modifications as the nature of the case may require."
We hold that appellant's contention that this Ordinance should have been either repealed or submitted to the qualified electors at an election is wholly without merit. The rule is uniformly accepted that initiative and referendum do not apply to executive or administrative matters of the kind covered by this Ordinance. We approve the following quotation from McQuillin's Municipal Corporations, Volume 5 (3rd ed.), Section 16.55:
"The power of initiative or referendum usually is restricted to legislative ordinances, resolutions or measures, and is not extended to executive or administrative action.
"In reference to what constitutes legislative and what administrative action in connection with restriction of the power of initiative or referendum to legislative matters it has been said that action relating to subjects of permanent and general character are usually regarded as legislative, and those providing for subjects of temporary and special character are regarded as administrative. A construction of a provision that `any proposed ordinance' may be submitted to the commission by a petition signed by a specified number of qualified electors has been construed to mean that any legislative measure of permanent operation can be so submitted, such construction being required by all-inclusive terms of the governing statute, particularly provision therein that an ordinance adopted under it cannot be repealed or amended except by a vote of the people. An ordinance which shows an intent to form a permanent rule of government is one of permanent operation within requirement that measure must be of permanent operation in order to be submitted to electors under initiative and referendum statute. Obviously, details which are essentially of a fluctuating sort, due to economic or other *420 conditions, cannot be set up in and by an ordinance to be submitted to vote of the people under initiative and referendum statute, which restricts submission to people to measures of permanent operation."
The decree of the lower court is hereby affirmed.
Affirmed.
SEBRING, C.J., and ROBERTS and MATHEWS, JJ., concur.