DREW, Justice
(dissenting).
Upon close analysis, the distinctions made between the case at bar and the earli *436 er decision in State v. City of St. Petersburg,[1] are, in my opinion, without merit.
That decision dealt with municipal action very similar to that involved in the case at bar, authorizing utility improvements or extensions and providing for issuance and payment of revenue certificates to finance same. The rule approved, for determining whether municipal ordinances are of such character as to require submission to the electorate by referendum under charter provisions for this procedure, was of considerable breadth, but the pivotal point appears to be contained in the following statement :[2]
“An ordinance which shows an intent to form a permanent rule of government is one of permanent operation within requirement that measure must be of permanent operation in order to be submitted to electors under initiative and referendum statute [e. s.]” [61 So. 2d 419]
Thus, while the transient effect of an enactment would be a material element in determining whether it is referable and consequently amendable only by like process, the real emphasis should be placed upon the nature of the object sought to be accomplished by a particular ordinance, rather than its mere duration. The definitive phrase “rule of government” may, of course, encompass a wide variety of action, the extent of which need not now be fully explored. There is substantial agreement upon the principle which, -I believe, disposes of this case: An act of a municipality designed to carry out a plan already adopted in performance of a proprietary function specifically devolved upon it by statutory or charter provisions,[3] not involving the initiation of any rule of conduct, is in a true sense administrative or executive action.[4]
The majority opinion seems to reach the conclusion that “the range and nature of the investment and the size and duration of the debt” afford the basis for determination that the subject ordinance is one within the scope of the referendum provisions of the charter. This seems to me to be illogical reasoning. What we are concerned with here is a principle of law and it seems to me that whether the amount involved is one or several million dollars the same principle would govern. The fact that the instrument which authorizes this debt and provides for its liquidation is denominated an ordinance makes no difference whatever.[5] It could just as well have been called a resolution or the debt could have been authorized and its liquidation provided for by a simple motion duly incorporated in the minutes of the council meeting. The form in which the action of the council was evidenced does not change its character. It is a mere means of evidencing the action of the official body authorizing the debt.
I can see no difference whatever in the principle involved in this case and that which would have been created by a motion duly made and carried authorizing a duly constituted official of the muncipality to borrow a given sum of money for the purpose of paying for the fuel necessary to operate the power plant or to repair any of its facilities. Both are administrative actions necessary to carry out the duties and responsibilities of furnishing the citizens of the municipality light and water placed on the shoulders of the commission by the mandates of the city charter. It is inconceivable that any city could successfully *437 operate or that the governing body could properly discharge its proprietary functions if ten percent of the electors of the city could stop in the tracks the performance of the administrative duties of the city commission under its charter. Such a principle engrafted upon the charter of this city could become an instrument of oppression and place in the hands of a small minority the power to curtail, if not completely destroy the orderly functioning of the corporate or administrative end of government. Such was never intended by a referendum clause in a city charter and, while I do not question the proposition that the Legislature might lawfully place in a city charter such a requirement, it is doubtful in my mind that they would do so. Historically, as we have pointed out, initiative and referendum have related to legislative and governmental action and not executive or administrative action and this Court has, at least until this case, not departed from that principle.
The fact that indebtedness of a certain character cannot under our Constitution[6] be incurred by governmental bodies without referendum does not alter the essential nature of such financial activity as part of the administration of a municipal business.[7] The apparent tendency in other jurisdictions to provide specifically for referendum on issues of certificates of indebtedness by municipalities may account for the absence of decisions construing general referendum provisions with reference to such activity. But where, as in the instant case, our constitutional inhibitions do not apply, where there exists no blanket provision for referendum upon municipal indebtedness generally, represented by revenue certificates in the form here involved, and the municipal action is clearly within the scope and mandates of the charter and prior duly enacted ordinances initiating the operation of water and electrical systems, then I believe the rationale by which the referendum process is normally limited has full application: “The reason for this rule is that to allow a referendum to be invoked to annul or delay executive conduct would destroy the efficiency necessary to successful administration of the business affairs of a municipality.” [8]
The decree should, in my opinion, be reversed.
THORNAL, J., concurs.

. Fla.1952, 61 So.2d 416.

. Ibid, at page 419, quoting from Me-Quillin’s Municipal Corporations, Yol. 5, 3rd ed., Sec. 16.55.

. Chapter 25962, Laws of Florida, Special 'Acts of 1949, under which the City may purchase, hire, construct, own, 'maintain, and operate public utilities. Section 3(40) directly authorizes the borrowing of money for any of these purposes, limited only by a provision, in effect, that funds pledged should not be such as to require referendum under Article IX, Fla. Const.

. Annotation, 122 A.L.R. 769.

. 62 C.J.S. Municipal Corporations § 449.

. Article IX, Section 6, Florida Constitution.

. State v. City of Miami, 113 Fla. 280, 152 So. 6.

.37 Am..Tur., Munie.Corp., Sec. 209,