71 189
74 128
74 691

JOHN HUNTER ET AL. APPEAL FROM DOINGS OF THE BOARD OF SEWER COMMISSIONERS OF SCHOOL DISTRICT NUMBER TWO OF ENFIELD.

First Judicial District, Hartford, October Term, 1898.  ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

In 1889 the legislature empowered (10 Special Laws, 1109) a school district in Enfield, acting by a board of sewer commissioners created for that purpose, to construct sewers in the district and assess the cost upon persons or land specially benefited. The Act also provided that any person aggrieved by any assessment might appeal to the judge of the Court of Common Pleas for Hartford county, for a re-assessment, and if such judge, or the committee to whom the appeal might be referred, should find cause to alter the assessment, he was then to re-apportion the whole amount of the benefits upon the persons or land specially benefited. Prior to 1884 Enfield had constructed several highway sewers to carry off surface water from its streets, and in a few instances had permitted adjoining landowners to drain into them upon payment of $25 to the town. In 1895 another Act authorized the district to maintain and repair all sewers within its limits which had been constructed by the town, and provided that " special benefits or betterments accruing to any person or land by reason of such sewers, or any of them, to an amount not exceeding $25 in any one case, may be assessed by the board of sewer commissioners of said district, in the manner now provided for the assessment of the cost of constructing sewers in said district, upon persons or lands so especially benefited; *provided*, such persons or land have not heretofore paid the town for the privilege of draining into any such sewer or sewers, to the end that all landowners who now enjoy, or who may hereafter enjoy, the privilege of draining into any of such sewers, may be equitably treated." Upon appeal from an assessment made under the latter Act, it was *held*, upon demurrer to the reasons of appeal:—

1. That the purpose for which the assessment was made, as well as the use to which the money raised must be devoted, sufficiently appeared from the assessment itself, in connection with the statute upon which it was based.

2. That inasmuch as the payment required by the Act was for the privilege of using, as public sewers, the former highway drains, and constituted a license fee or excise duty rather than a tax on property, the board was not required to pave the way for an assessment by a previous estimate of the cost of the sewers already constructed by the town, or of the expense of their perpetual maintenance.

The committee to whom the cause was referred, found that the privilege of connecting with the sewers in question was a substantial benefit, and that the amount of benefits assessed in each case by the board was just and reasonable. No exception to the evidence or estimates upon which these conclusions were based was taken by the property owners. *Held* that under these circumstances it was to be presumed by this court that the committee took such steps and secured such information as the law contemplated as the foundation for such assessment.

A license by the town authorities to use a highway drain built for surface water only, is not equivalent to the grant of a perpetual right of drainage into a public sewer placed under the charge of a competent board of sewer commissioners; nor do the taxpayers whose money has been used in constructing such surface drains thereby acquire any title to mingle their sewage with the surface water.

Whether the Act of 1895 authorized an appeal for want of jurisdiction or irregularities in procedure on the part of the board of sewer commissioners, *quære.*

In view of the remedial nature of General Statutes, § 1014, which gives an absolute right in every civil action to plead over after demurrer overruled, a party by pleading over cannot be held to have waived his right to have the rulings upon demurrer reviewed by this court upon appeal, after final judgment has been rendered against him.

Argued October 5th—decided November 11th, 1898.

APPEAL of sundry owners of land in Enfield from assessments for "betterments and benefits" made against them by the Board of Sewer Commissioners of School District No. 2, in the town of Enfield, "as to their use of certain sewers on Main" and other streets in that district.

The appeal was taken to *Hon. David S. Calhoun*, Judge of the Court of Common Pleas for Hartford County, under authority of 10 Special Laws, 1109, and 12 Special Laws, 314, and finally disposed of by a judgment rendered by his successor in office, *Hon. William S. Case*, setting the assessments aside; from which the board took this appeal. *Error and judgment reversed.*

In the original appeal to *Judge Calhoun*, the petitioners alleged that they were aggrieved because: (1) one of the sewer commissioners was not a freeholder of the district; (2) and the assessments were illegal "because said sewers and the connections therewith were made at various periods, from seven to twenty years ago, when said sewers were

owned by the town of Enfield; and the legislature has not the power to authorize an assessment now, in favor of said school district or sewer district, of special benefits alleged to have accrued by reason of said sewers, or the continued use thereof;" (3) and because "it does not appear in said assessment or elsewhere for what purpose said assessment is made, or how much money is required, or what is to be done, or what expense is to be met, or damages paid, with the money raised by said assessments;" and (4) because "previous to the construction of said sewers most of the petitioners had other, sufficient, and satisfactory methods and systems of draining their respective properties, which were better and more convenient than the privileges afforded by said sewers; but were induced by promises of immunity from assessments, and compelled by the officials of said town of Enfield, to give up said private systems of drainage and to connect their properties with the public sewers;" and (5) that "no special benefits had accrued to the petitioners or any of them by reason of the use of said sewers;" and (6) that "said assessment is unequal and therefore inequitable;" and (7) that they, "so far as they have connected their properties with said sewers at all, did so many years ago, with the full knowledge and consent of said town of Enfield, acting therein by their selectmen, health officer, and other officials; and said petitioners have, previous to the passage of said Act of January session, 1895, heretofore paid to the town of Enfield all sums required of them by said town for such connections, and have so paid to said town a legal and sufficient consideration in money, rights, and other valuable things, for the privilege of draining into said sewers."

Certain objections were also pleaded applicable to certain of the appellants only.

The prayer was "for a re-assessment of benefits in accordance with the facts stated above."

The averments that no special benefits had accrued, and that the appellants had paid the town for the right to use the sewers were denied, and a demurrer was filed as to the rest of the reasons of appeal. The first, second and fifth rea-

sons of appeal, and so much of the fourth as respected the surrender of private drainage facilities, were held (*Calhoun, J.*) insufficient, and the residue sufficient.

The answer was then amended by adding a denial of those reasons of appeal which had been held to be sufficient, together with certain new matter, and the cause sent to a committee, whose report stated the following facts : —

The sewers in question were built by the town of Enfield between 1874 and 1884, to carry off the surface water from certain streets within the limits of school district No. 2, and were paid for by general taxation. Since 1889, the board of sewer commissioners have built a number of sewers in the district. Some of the appellants who were assessed for benefits for the Main street sewer had, up to 1893, drained their premises into a brook. This became a nuisance, and in that year the health officer of the town prohibited it, whereupon, at his suggestion, they made connections with the Main street sewer at their own expense.

The board of sewer commissioners in 1896 duly notified all parties in interest, of a hearing before them " relative to the amount of damages or betterments and benefits, or both, to be appraised or assessed to you respectively, as to your use of " the sewers in question. In making the assessments complained of no actual appraisal of the amount required for the maintenance, repair, or reconstruction of the sewers was made by the commissioners, nor is there anything in their records to show the purpose to which the amounts realized upon the assessment were to be applied; neither was any assessment of the actual benefits to each piece of property on account of the connections with these sewers made. In the case of the sewer on Main street, it appeared that certain parties owning property on the north side of Main street had previously connected their property with that sewer, and had in each case paid benefits, and in no case less than twenty-five dollars. The commissioners assumed that the benefit to each property on the south side of Main street was at least that amount ; and being limited by the resolution to that amount, made the assessment in the manner above set forth.

Prior to the Act of 1895, the drains in the streets in question were in no sense public sewers. The privilege of connecting with them, when put, as public sewers, under the supervision and control of the board of sewer commissioners, was a substantial benefit to each of the properties connected therewith, and the amount of benefits assessed in each case by the commissioners was not excessive, and was just and reasonable.

It was claimed before the committee by the appellants, that these benefits accrued to the property when the sewers were originally built, and that the persons then owning the land were those in fact benefited thereby. This claim was overruled by the committee.

The board of sewer commissioners offered testimony before the committee that on the hearing before them they had publicly stated to the appellants and all other parties in interest, that the money to be raised by the proposed assessment was to be expended for the maintenance of the general highway drains placed by the Act of 1895 under the control and management of said board, on account of which they levied. The appellants objected to this testimony, and the committee excluded it.

The conclusions of the committee were thus stated: "If the court, from the facts found and the records of the action of the board of sewer commissioners, is of the opinion that their action in making this assessment was legal and authorized by the resolution of May 18th, 1895, then I find that judgment should be rendered in favor of the appellees, and the appeal dismissed. But if the court should find from the facts found and the records of the doings of the sewer commissions as set forth herein, that the action was not legal and authorized by the resolution, then judgment should be rendered for the appellants, and the assessment appealed from set aside."

The records of the board showed that they had made expenditures from year to year in the maintenance and repair of sewers.

The report was accepted against the remonstrance of each

party, ( *Case, J.* ) and a judgment rendered setting the assessments aside.

*Charles H. Briscoe*, for the appellant in this court (Board of Sewer Commissioners).

*Charles E. Perkins* and *John Hamlin*, for the appellees in this court (Hunter et al).

BALDWIN, J. A thickly populated portion of the town of Enfield is embraced within the limits of school district No. 2. In view of this, the General Assembly, in 1889 (10 Special Laws, 1109), gave the district power to construct, maintain, and repair sewers in those limits, and to assess the cost of construction upon the persons or land that might be benefited. An appeal to the judge of the Court of Common Pleas for Hartford county was given to any person aggrieved by any such assessment, " by a suitable petition in writing setting forth the whole of said . . . assessment appealed from, and asking for a . . . re-assessment." Provision was made for making all persons interested in the assessment, as a whole, parties to the proceeding. The appeal was to be referred to a committee, if desired by any party. If upon the hearing of an appeal from an assessment of benefits the judge or committee should " find cause to alter said . . . assessment, . . . said judge or committee " was to " proceed to re-apportion the whole amount of the . . . benefits . . . upon the persons or land specially benefited." The judge was to " have, for the purpose of disposing of said appeal, all the power of the Superior Court, and may render judgment therein, and may tax costs in favor of either party and issue execution for said costs, to be taxed as upon civil process in the Superior Court."

In 1895 (12 Special Laws, 314), the district was further authorized to maintain and repair all sewers within its limits which had been previously constructed by the town, and it was provided that " special benefits or betterments accruing to any person or land by reason of such sewers, or any of

them, to an amount not exceeding twenty-five dollars in any one case, may be assessed by the board of sewer commissioners of said district, in the manner now provided for the assessment of the cost of constructing sewers in said district, upon the persons or land so especially benefited; *provided*, such persons or land have not heretofore paid the town for the privilege of draining into any such sewer or sewers, to the end that all landowners who now enjoy, or who may hereafter enjoy, the privilege of draining into any of such sewers may be equitably treated." The board was also empowered to regulate the time. place and manner of making connections with any sewer; saving the right of the town to continue to use those that it had already constructed, for the purpose of draining off the surface water from the highways.

The present proceeding is an appeal from an assessment of benefits, and the only claim stated in the petition is for a re-assessment. The judgment which is now before us for review is one setting aside the assessments appealed from, altogether. Had it been based upon a finding that no benefits accrued to any of the petitioners, it would unquestionably have been in law a re-assessment. The finding, however. is that they did receive benefits to the full amount at which they were assessed, and the judgment rests upon legal objections to the jurisdiction of the board of sewer commissioners to make any assessments under the circumstances of the case, and to the regularity of its mode of procedure. These objections were first brought forward in the statement of grievances contained in the petition of appeal to the judge of the Court of Common Pleas, and several of them were held sufficient on demurrer. The board of sewer commissioners thereupon answered over, but now insists that there was error in overruling its demurrer.

Two questions of law are thus presented. One is whether want of jurisdiction or irregularities in procedure on the part of the board of sewer commissioners can be made the ground of an appeal under the Act of 1895. The other is whether error can be assigned in overruling a demurrer, after there has been an answer over and a trial on the merits.

The first of these questions has not been fully argued before us, and we do not find it necessary to decide it. The construction of the statute which the petitioners claim, was apparently given to one almost identical in terms, in the case of *Park Ecclesiastical Society* v. *Hartford*, 47 Conn. 89. There, however, no question as to its propriety was raised or considered.

If that construction be not the true one, then the judgment now under review was necessarily erroneous. If it be the true one, there was also error, since none of the legal objections put forward in the petition to the judge of the Court of Common Pleas and sustained on demurrer, are well taken.

The third of the grounds stated for the appeal was that it did not appear what was the purpose of the assessments, or how much money was required, or what use was to be made of it. The judge of the Court of Common Pleas erred in holding this to be sufficient. It did appear from the assessments, in connection with the statute upon which they were based, that they were laid to replenish the treasury of the municipal corporation charged with the burden of maintaining the sewers, and to equalize the contributions made and to be made by the parties especially benefited by their existence, " to the end that " all alike might be " equitably treated."

The maintenance of such sewers must be a constant occasion of expense. The corporation had two distinct functions. One was to support the public schools of the district. The other was to support the public sewers of the district. It is to be presumed that public officers will do their duty. It is not to be presumed that money raised for school purposes will be spent on the general sewerage system, or that money exacted from the property owners for the privilege of using the sewers will be spent on schools.

It was not necessary for the board to pave the way for an assessment by a previous estimate of the work upon the sewers that the future might call for, or its probable expense. They were indeed directed by the Act of 1895 to assess these benefits " in the manner now provided for the assessment of the

cost of constructing sewers in said district;" but this can only refer to such of the statutory rules of procedure as are reasonably adapted to the subject in hand. It required due notice and hearing, but it could not be regarded as demanding an estimate of the cost either of constructing sewers which had been already constructed by the town of Enfield, or of their perpetual maintenance. Such an estimate would have been useless, as a basis of assessment, in view of the statutory limit which was set. A special and unusual condition of affairs was made the subject of special and unusual legislation. There were certain surface drains in Enfield which, if placed under proper supervision, might safely be used as public sewers. The health of the community required that to a certain extent they should be so used. They were taken by the State out of the hands of one public agency, the town, and put under the charge of another, the school district. A special board of commissioners was created to assume their management, and to give its undivided attention to this one matter. It is to be presumed that it is competent for the task. *State* v. *Main*, 69 Conn. 123, 140. The privilege of using sewers which are under such control is a valuable one to all who have or may have occasion to drain their lands or buildings. The measure of its value is not dependent on what the sewers cost, so much as on what a connection with them is worth. Payment for such a privilege is required not as a tax on property, but as a license fee or excise. It would be difficult to suggest a fairer mode of fixing the proper charge to be made to each of the landowners who may be interested, than that of leaving it to the decision of a local board, in the election of which those most interested in the assessment would naturally participate, and which was forbidden to demand over $25 from any man, that being a sum which others had been found willing to pay for the less valuable privilege of connecting with the sewers while they remained under the management of the selectmen,—a body having no special qualifications for that task.

Had the board of sewer commissioners, after these erroneous rulings, stood by its demurrer, any final judgment against

it upon the issues of law thus determined would have been reversed on appeal. Did its pleading over cure the errors? This involves the consideration of a point which has never heretofore been made the subject of a decision in this court.

It is held in most of our States that an answer by leave of court, after demurrer overruled, is a waiver of the demurrer and of any error that may have been committed in overruling it, unless a different rule has been prescribed by statute. Encyclopedia of Pleading and Practice, title *Demurrer*, 366, 367. Two exceptions only are admitted to this doctrine. It does not cure an error in a judgment rendered after a sufficient plea to the jurisdiction has been held bad, or upon a state of facts which cannot legally support it. *Teal* v. *Walker*, 111 U. S. 242, 246.

General Statutes, § 1014, gives an absolute right in every civil action to plead over after demurrer overruled. This is in furtherance of a policy which is a somewhat distinctive and peculiar feature of our system of civil procedure,—that of favoring double pleading, permitting alternative and inconsistent claims for relief, and allowing a claim to be contested on the merits upon a hearing in damages after an interlocutory judgment for the plaintiff on a demurrer or default. General Statutes, § 1015 ; Practice Book, p. 13, § 9, p. 17, §§ 8, 9 ; *Shepard* v. *New Haven & Northampton Co.*, 45 Conn. 54. Until the enactment of the Practice Act, it was the settled usage to reply to pleas in abatement that they were both untrue and insufficient, and similar issues were often tendered and closed upon a remonstrance to the report of a committee, or reasons of appeal from probate. The Practice Act, unlike the codes of civil procedure in most of our States, did not profess to introduce a complete and scientific system of pleading. It simply made certain changes in an ancient system, and that a system more convenient in practice than symmetrical in form.

Viewed in this light, General Statutes, § 1014, should be liberally expounded to advance the remedy which it was designed to supply. It gives an absolute right to plead over, with the manifest intent of enabling a defendant to take

every objection which might lie open to him, in one and the same suit, instead of either confining him to an election between matters of law and matters of fact, or leaving any relaxation of this rule of the common law to the discretion of the court. To make this right fully valuable, it must be protected by a corresponding right of review.

The general practice of the bar has been in conformity with these views, and until recently it has been unchallenged in this court. We are of opinion that it may be vindicated by the considerations that have been stated, and so that in the present case the erroneous rulings on the demurrer to the reasons of appeal are a proper subject of review.

If the original appellants were aggrieved by the assessments laid upon them by the board of sewer commissioners, they had a right to a re-assessment, and re-apportionment. Whether they were aggrieved or not was a judicial question, a decision of which in their favor by the appellate tribunal was a condition precedent to any judgment in their favor; since the statute directs a re-assessment only in case it be found that there is " cause to alter " the original assessment. *Ives* v. *Goshen*, 65 Conn. 456, 459. The report of the committee, taken in connection with the law of the case which has been already stated, shows that they were not aggrieved. The finding is that the privilege of connecting with the sewers in question was " a substantial benefit to each of the properties connected therewith," and " the amount of benefits assessed in each case by the commissioners was not excessive, and was just and reasonable." These conclusions could only have been reached after a re-assessment by the committee of the benefits properly chargeable, within the statutory limit, to each of the appellants who were before him. No exceptions on their part to the evidence or estimates upon which the result was reached have been presented for our consideration, and it is therefore to be presumed that the committee took such steps and secured such information as the law contemplated as the foundation of such assessments. He had a right to consider the value of the potential use of a sewer to

adjoining proprietors who then had no buildings on their land, or none which they had, as yet, found it necessary to supply with drains. A privilege is not valueless simply because it is unexercised.

Several of the grievances stated in the petition of appeal were held insufficient by the judge of the Court of Common Pleas, and no appeal has been taken from his decision upon them. Of the others some were matters of fact and some of law.

Those of fact are, in substance, that no benefits have accrued to any of the original appellants by reason of the use of the sewers, and that some of them have made no connections with them. These averments are met and disposed of by the finding that the privilege of connection with sewers under the management of the board of sewer commissioners is a benefit to each, to the full amount for which he was assessed.

Of the legal grievances relied on, some have been already discussed and held to be insufficient. The others were, that those who have made connections with the sewers were allowed to do so by the town of Enfield; and that the sewers were built by the town and paid for by general taxation, falling in part on them or their predecessors in title. The first of these is immaterial, in view of the finding that the sewers were not public sewers but mere surface drains, while under town management. A license to use such a drain must necessarily have been limited to uses consistent with its proper function, and is not equivalent to a perpetual right of connection with a public sewer. The second reason stands on no better ground. The taxes were laid to aid in draining highways, and the taxpayers acquired no title to mingle their sewage with the surface water.

The report of the committee shows that the assessments made were reasonable and fair. No legal cause was shown for altering them; and the proper and necessary conclusion from the facts found was the denial of the re-assessment claimed, and a dismissal of the appeal.

Bristol v. New Britain.

The judgment appealed from is reversed and the cause remanded to the judge of the Court of Common Pleas, with directions to enter a judgment dismissing the appeal.

In this opinion the other judges concurred.