ANITA M. NOWAK *v.* KURT D. NOWAK ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued November 3, 1977—decision released May 9, 1978

*Joel J. Rottner,* with whom, on the brief, were *Joseph F. Skelley, Jr.,* and *Edward S. Ludorf,* for the appellant (defendant Salvatore Monarca, Jr.).

*Paul B. Groobert,* for the appellee (plaintiff).

SPEZIALE, J. The defendant Salvatore Monarca, Jr., has appealed from a judgment rendered on a jury verdict finding him liable to the plaintiff, Anita Nowak, hereinafter Anita.

While a passenger in an automobile operated by her son, Kurt, Anita sustained injuries when the Nowak vehicle and an automobile operated by Monarca collided at an intersection. In her complaint she alleged that the collision, and her resultant injuries, were caused by the negligence of Kurt and Monarca.[1] The Monarca answer included a special defense alleging that at the time the collision occurred Anita was instructing Kurt in the use and operation of the car, that Kurt was negligent in the manner described in Anita's complaint, that according to General Statutes § 14-214[2] Anita was responsible for the operation of the vehicle while Kurt was driving, and that, therefore, Kurt's negligence was *imputed* to her as the person responsible

[1] The complaint originally also included Salvatore and Josephine Monarca as owners of the Monarca vehicle. The action against them was withdrawn before the case went to trial.

The plaintiff's action against Kurt was settled out of court for $8,000, and the subsequent judgment against Monarca for $40,000 was reduced accordingly. See General Statutes § 52-216a.

[2] "[General Statutes] Sec. 14-214. INSTRUCTION OF UNLICENSED PERSON. Any licensed operator, being eighteen years of age and having had an operator's license to operate a motor vehicle of the same class as the motor vehicle being operated for at least two years preceding the date of such instruction, may instruct a person sixteen or more years of age, not a licensed operator, in the operation of a motor vehicle. Any person so instructing another in the use of any motor vehicle except a motorcycle shall be so seated as to control the operation of the motor vehicle and shall be responsible for the operation thereof. Violation of any provision of this section shall be an infraction."

This statute is essentially the same as the one in effect at the time of the collision in this case. The predecessor statute required that the instructor-operator be at least twenty-one years of age, and provided that a violator be fined not more than fifty dollars.

for and in control of the vehicle, thereby barring her recovery[3] against the defendant Monarca.[4] Anita demurred to the special defense, arguing, inter alia, that neither the General Statutes (§ 14-36,[5] § 14-214) nor the common law requires that the negligence of the operator be imputed to the owner-occupant-instructor. The demurrer was sustained by the court (*Rubinow, J.*) in a thorough and well-reasoned memorandum of decision. Monarca then moved for permission to file a new special defense. The motion was granted and a defense was filed, alleging that any damages suffered by Anita were the proximate result of her own negligence. This was the basic posture of the case which ultimately went to trial and resulted in a plaintiff's verdict. Although the complaint and answer were amended several more times before trial, the defendant made no attempt to reintroduce the defense of imputed negligence.

[3] At the time the cause of action arose—November 27, 1970—the contributory negligence of the plaintiff was a complete bar to recovery. Comparative negligence has since become the law. See General Statutes § 52-572h.

[4] Kurt's answer also raised the special defense of imputed negligence, but since the action against Kurt was settled, we have limited our discussion to the pleadings relating to the action against Monarca.

[5] Section 14-36 (a) of the General Statutes provides, in pertinent part: "No person shall operate a motor vehicle upon any public highway of this state until he has obtained from the commissioner a license for such purpose, except that any person over sixteen years of age who has not had such a license suspended or revoked may, for a period not exceeding thirty days, operate a motor vehicle while under the instructions of, and accompanied by, a person who is at least eighteen years of age and has been licensed for not less than two years preceding such instruction to operate a motor vehicle of the same class as the motor vehicle being operated, who shall have full control of the motor vehicle as provided by law. . . ."

At the time of the collision this section required that the instructor be twenty-one years of age.

The defendant's sole claim on appeal is that it was error for the court to sustain the plaintiff's demurrer to his special defense. Before we reach this claim, however, we first respond to the plaintiff's assertion that the defendant, by electing to file the new special defense of contributory negligence, waived his right to appeal the ruling sustaining the demurrer to the original special defense of imputed negligence.

## I

.A demurrer is a means of challenging the legal sufficiency of a pleading. The ground for the demurrer may be that the facts, as pleaded, do not constitute a legally recognizable claim for relief, or the demurrer may be intended to reach procedural defects in the pleading such as misjoinder of actions or nonjoinder of parties. Practice Book, 1963, § 106;[6] see 1 Stephenson, Conn. Civ. Proc. § 117; James, Civil Procedure § 4.1. A demurrer may be filed by either party: a defendant can demur to the complaint; a plaintiff can demur to a special defense or counterclaim.

At common law, a ruling on a demurrer was equivalent to a final judgment; there was no opportunity to amend or to plead over. 1 Stephenson, supra, § 119 (a); James, supra. Thus, a party was

---

[6] "[Practice Book, 1963] Sec. 106.—[DEMURRERS] SCOPE OF REMEDY. The demurrer is the only remedy before trial by which to test the legal sufficiency of a cause of action, including the nonjoinder of a necessary party, or of a defense, whether stated in one pleading, count or defense, or in a paragraph or paragraphs thereof. The demurrer in each case must be to the entire cause of action or an entire or partial defense so stated, and can be used for no other purpose, except that where several causes of action or several defenses are stated in a single pleading or count, a demurrer may be addressed to such pleading or count in so far as it purports to state one or more of such causes of action or defenses. (See Sec. 220 re briefs.)"

forced to elect between filing a demurrer or answering and defending on the merits. Today, however, a party whose demurrer is overruled has a right to plead over. General Statutes § 52-95; Practice Book, 1963, § 113. If a demurrer to a plaintiff's complaint is sustained, the plaintiff may amend the complaint, as of right, within fifteen days. Practice Book, 1963, § 131. Although no such right is expressly granted to defendants, amendments are generally freely allowed. 1 Stephenson, supra, § 119 (c).

The ruling on a demurrer, especially where the issue involved is the legal sufficiency of the cause of action or special defense, is likely to have a substantial impact on the ultimate disposition of the case. Nevertheless, a party against whom the ruling is made is often foreclosed from appealing it after final judgment. It has long been the law in Connecticut that when a demurrer is *overruled,* the correctness of the ruling may always be raised on appeal. *Hunter's Appeal,* 71 Conn. 189, 41 A. 557 (1898). When a demurrer is *sustained,* however, it is the rule that unless the party whose pleading has been ruled insufficient chooses to stand on the pleadings and appeal from the judgment rendered thereon, the filing of any further pleading will be regarded as a waiver and withdrawal of the disputed pleading, and the right to appeal the ruling will be lost. *Good Humor Corporation* v. *Ricciuti,* 160 Conn. 133, 135–36, 273 A.2d 886 (1970); *Panaroni* v. *Johnson,* 158 Conn. 92, 103, 256 A.2d 246 (1969); *Rossignol* v. *Danbury School of Aeronautics, Inc.,* 154 Conn. 549, 554, 227 A.2d 418 (1967); *Grady* v. *Kennedy,* 145 Conn. 579, 584, 145 A.2d 124 (1958); *West* v. *Lewis Oyster Co.,* 99 Conn. 55, 67, 121 A. 462 (1923); *Mitchell* v. *Smith,* 74 Conn.

125, 127–28, 49 A. 909 (1901); *Boland* v. *O'Neil,* 72 Conn. 217, 220, 44 A. 15 (1899); 1 Stephenson, supra, § 119 (b), (c).

There is much to justify this rule when applied to a plaintiff. Because two complaints cannot coexist in the same action, the filing of a substituted or amended complaint must of necessity remove the original pleading from the file. See *Good Humor Corporation* v. *Ricciuti,* supra, 137. Moreover, a plaintiff against whom a demurrer has been sustained can stand on the pleadings, allow the entry of judgment and appeal the ruling. If the appeal is not successful, a new complaint grounded on another legal theory can usually be filed. See General Statutes § 52-592; *Ross Realty Corporation* v. *Surkis,* 163 Conn. 388, 392–93, 311 A.2d 74 (1972); *Bassett* v. *Foster,* 116 Conn. 29, 30–31, 163 A. 456 (1932); *Johnson* v. *Wheeler,* 108 Conn. 484, 488, 143 A. 898 (1928); but cf. *Stamford Dock & Realty Corporation* v. *Stamford,* 124 Conn. 341, 342n, 200 A. 343 (1938).

The situation is different, however, when the rule is applied to defendants, and it is a demurrer to a *special defense* which has been sustained. First, because several special defenses can be filed in response to a single complaint, the filing of a new special defense does not implicitly withdraw a defense previously filed. Second, a defendant who chooses to stand on the pleadings and appeal the ruling on a demurrer must forever forego the right to a trial on the merits if the appeal is lost. Thus, it is clearly desirable to distinguish between a complaint on the one hand and a special defense on the other before applying the rule that amending the pleadings after a demurrer is sustained waives

the right to appeal the ruling on the original plead-ing.[7] The cases which have relied on the rule and found the right to appeal waived do not appear to have made such a distinction. E.g. *Panaroni* v. *Johnson,* supra (demurrer to defense); *West* v. *Lewis Oyster Co.,* supra (demurrer to defense and cross-complaint); *Mitchell* v. *Smith,* supra (demurrer to defense).

Under some circumstances, after a demurrer to a special defense has been sustained it may be pos-sible to defend on the merits without waiving the right to appeal the ruling on the demurrer. For example, if the state of the pleadings is such at the time the demurrer is sustained that the defendant need not amend the answer in any way before going to trial, then the issue can be preserved for appeal. *Scott* v. *Scott,* 83 Conn. 634, 636, 78 A. 314 (1910);[8] Maltbie, Conn. App. Proc. § 65. Also, in *Falzone* v. *Gruner,* 132 Conn. 415, 418, 45 A.2d 153 (1945), there is dictum to the effect that a defendant who files a "second" or "additional special defense," rather than an entirely new answer, does not waive the right to a review of a ruling sustaining a demurrer. Although this alternative would appear

---

[7] Permitting review of a decision sustaining a demurrer to a special defense even when a separate, unrelated special defense has been subsequently pled in no way prejudices the plaintiff. The plaintiff must, in any event, prove the cause of action alleged in the complaint. It is the defendant who bears the burden of proving a special defense, and, while such a defense may cause a plaintiff to submit some additional evidence to counteract this, the plaintiff's actual burden of proof is in no way affected.

[8] In the *Scott* case, the defendant raised two defenses to the complaint. The first defense was a general denial and the second was found insufficient on demurrer. The court determined that going to trial under the general issue after a demurrer to the second defense had been sustained did not waive the right to appeal the ruling on the demurrer after final judgment. *Scott* v. *Scott,* 83 Conn. 634, 78 A. 314 (1910).

to provide some recourse for a defendant confronted by the waiver rule, it has the drawback of characterizing a waiver by the label applied to a new pleading, and a defendant will often find it difficult to amend without waiving.[9]  Another possibility is

[9] The facts of *Falzone* v. *Gruner*, 132 Conn. 415, 45 A.2d 153 (1945), reveal the difficulty a defendant might encounter in attempting to amend pleadings without waiving the right to a review.  In *Falzone*, the complaint alleged three grounds of negligence.  It appears that the defendant filed a special defense, alleging that the plaintiff's decedent was acting pursuant to an agreement with the defendant when she was injured, and, "[a]fter a demurrer to this defense was sustained, he filed a substituted answer in which he denied the essential allegations of the complaint and pleaded by way of special defense that the decedent was contributorily negligent." Id., 417.  After a trial on the merits, the defendant sought to appeal the ruling on the demurrer.  This court denied review, on grounds that "[t]he defendant, by subsequently filing an entirely new answer, instead of merely a 'second' or 'additional special defense,' obviated any necessity of considering the demurrer, for he thereby waived any right to a review of the ruling that the original special defense was defective." Id., 418.

It is almost impossible to ascertain from this description what the defendant should have—or could have—done to preserve his appeal.  It is clear that the special defense of contributory negligence was sufficiently different from the original special defense to constitute, on its face, a "second" or "additional" special defense.  The court states that the defendant's waiver consisted in "filing an entirely new answer, instead of merely a 'second' or 'additional special defense.' " Was it simply the failure to *label* the contributory negligence defense properly which constituted the waiver?  Was it the fact that the special defense was *part of* an entirely new answer rather than the *only* addition to the pleadings?  It would be impossible to answer these questions without an opportunity to examine the actual pleadings in the case, and even if this were possible, it might not provide an answer.

Thus, a defendant trying to amend pleadings so as to fall within the exception suggested by *Falzone* must first confront the question of what the exception is.  If one need only label the defense properly, it should be fairly easy to comply, although this is clearly placing form over substance.  If, however, the only way to preserve the right to appeal is by not "filing an entirely new answer," but by limiting the amendment of the pleadings to the addition of a second special defense, then it may be impossible to mount an effective defense and still fall within the exception.

to reintroduce the issue during the course of the trial, as in a proffer of evidence in support of the defense ruled out or in a request to charge the jury. An adverse evidentiary ruling or a refusal to charge can then be claimed as error on appeal. See 1 Stephenson, supra, § 119 (c).[10]

Thus, although some defendants may have the good fortune to obtain a review of a ruling sustaining a demurrer, many more will be foreclosed by the necessity of amending their pleadings. This is not consistent with our long-standing policy of permitting a defendant to raise all available defenses in the same action. *Hunter's Appeal,* supra, was the first case to allow an appeal from the overruling of a demurrer where the demurring party had pleaded over and the case had gone to trial on the merits. Up until that time, pleading over after the overruling of a demurrer was considered a waiver of the demurrer and of any error in the ruling of the court. In justifying its decision to alter the prevailing practice, the court emphasized that then General Statutes (Rev. 1888) § 1014 (now General Statutes § 52-95) "gives an absolute right to plead over [after demurrer overruled], with the manifest intent of enabling a defendant to take every objection which might lie open to him, in one and the same suit, instead of either confining him to an election between matters of law and matters of fact, or leaving any relaxation of this

---

[10] Stephenson suggests that this is the proper method for preserving the right to review. It seems unlikely, however, that a review of a ruling at trial would accomplish the same purpose as a review of the ruling on the demurrer. If a demurrer is sustained, the claim demurred to will not be an issue at trial. Therefore, it is difficult to imagine that a trial court would be found in error for refusing to admit evidence or refusing to charge on an issue which was not part of the case as tried.

rule of the common law to the discretion of the court. To make this right fully valuable, it must be protected by a corresponding right of review." *Hunter's Appeal,* supra, 198–99. Therefore, to be consistent with this reasoning, a similar right of review should be provided where a demurrer to a special defense has been *sustained* and the defendant has amended the pleadings to change the focus of the defense. Decisions subsequent to *Hunter's Appeal,* however, have limited its application to appeals from the overruling of a demurrer, thereby forcing many defendants to an election between defense or appeal. The sustaining of a demurrer to a special defense may, in effect, leave a defendant nearly as defenseless as the overruling of a demurrer to a complaint; in the latter instance, however, one can try to defend oneself and retain a right to review, while in the former case this is often impossible.

In view of the foregoing, we hold that a defendant does not necessarily waive the right to appeal a ruling sustaining a demurrer to a special defense by subsequently amending the pleadings. There may, of course, be circumstances in which amendment does constitute a waiver, as when the amendment is for the purpose of correcting a formal defect in the original pleading. See 1 Stephenson, Conn. Civ. Proc. § 116 (a). Whether review has been waived by amendment can only be determined by looking to the facts of each particular case.

On the facts of the case before us, we hold that the defendant did not waive his right to review by filing a defense alleging contributory negligence after the plaintiff's demurrer to his defense of

imputed negligence was sustained. The second defense was based on an entirely new theory; it was not merely an attempt to correct a defect in the defense successfully demurred to. The two defenses could both have been filed in the original answer, and thus the filing of the second defense need not constitute a withdrawal of the first. Cf. *Good Humor Corporation* v. *Ricciuti,* supra, 137. The defendant has a right to appeal the ruling on his special defense of imputed negligence.

## II

Having determined that the defendant did not waive his right to appeal the ruling on the demurrer by introducing another special defense, we now review the substance of his claim. The issue presented is whether, under the provisions of §§ 14-36 (a) and 14-214, the negligence of a learner will be imputed to an instructor, thereby barring recovery by the instructor against a third party. The lower court, in its memorandum of decision, concluded that the statutes in question were intended to impose penal, not civil, liability, and that they should not be construed to impose a civil disability on a nonnegligent instructor who had complied with the statutes. We agree.

General Statutes § 14-36 (a) permits an unlicensed operator to "operate a motor vehicle while *under the instructions of, and accompanied by,* a person who is at least eighteen years of age and has been licensed for not less than two years preceding such instruction to operate a motor vehicle of the same class as the motor vehicle being operated, *who shall have full control of the motor vehicle as provided by law. . . ."* (Emphasis added.) Sub-

section (d) of § 14-36 provides that anyone who violates subsection (a) shall be fined not more than fifty dollars for a first offense and, for any subsequent offense shall be fined not more than one hundred dollars or imprisoned not more than thirty days or both. Section 14-214 of the General Statutes permits a licensed operator to instruct an unlicensed operator, and explicitly requires that "[a]ny person so instructing another in the use of any motor vehicle except a motorcycle shall be so seated as to control the operation of the motor vehicle and shall be responsible for the operation thereof." The section further provides that "[v]iolation of any provision of this section shall be an infraction."

The obvious purpose of these statutes is to prevent inexperienced operators from driving without instruction and supervision and, also, to ensure that licensed operators who undertake to instruct and supervise will take this responsibility seriously. To this end, criminal sanctions may be imposed for noncompliance.[11]

The statutes before us, especially § 14-214, impose an additional burden of care on licensed drivers who undertake the instruction and supervision of unlicensed drivers. Criminal liability is imposed to induce compliance with the statutory standard of conduct. A statute which creates a liability where formerly none existed "should receive a strict construction and is not to be extended, modified . . . or enlarged in its scope by the mechanics of construction." *Edmundson* v. *Rivera,* 169 Conn. 630, 633,

---

[11] For the purpose of this opinion, we need not reach the question of whether, under these statutes, an instructor may be held criminally liable for misconduct by the operator without regard to the instructor's own conduct.

363 A.2d 1031 (1975). Penal statutes should be construed strictly and not extended by implication to create a liability which no language of the act purports to create. *Dennis* v. *Shaw,* 137 Conn. 450, 453, 78 A.2d 691 (1951). Since neither of the statutes relied upon by the defendant makes any reference to civil liability, they should not be construed to impose such liability on an instructor. *Forker* v. *Pomponio,* 60 N.J. Super. 278, 283–84, 158 A.2d 849 (1960); *Sardo* v. *Herlihy,* 143 Misc. 397, 400, 256 N.Y.S. 690 (1932). If, under these statutes, the plaintiff-instructor cannot be held vicariously liable to the defendant for the negligence of her instructee, it is obvious that such negligence cannot be imputed to her to bar her recovery from that defendant.

There are, moreover, other considerations which necessarily influence our decision in this case. Although we hold that §§ 14-36 (a) and 14-214 do not make an instructor vicariously liable in tort for the negligence of a learner, we note that the imposition of vicarious liability is not unknown under Connecticut law.[12] The justification for imputing negligence to an innocent party is the social necessity to provide injured plaintiffs with financially responsible defendants. 2 Harper & James, Torts § 23.6, p. 1274; Prosser, Torts (4th Ed.) § 73. Although public policy may thus justify the imposition of liability on an innocent defendant—and, in fact, the widespread availability of insurance somewhat mitigates the potential harshness of such a rule—there is no corresponding justification for imputing negligence to bar recovery

---

[12] The family purpose doctrine is a prime example. See General Statutes § 52-182; *Dibble* v. *Wolff,* 135 Conn. 428, 433, 65 A.2d 479 (1949).

by a faultless plaintiff. See *Weber* v. *Stokely-Van Camp, Inc.* 274 Minn. 482, 486, 144 N.W.2d 540 (1966). "The whole doctrine of vicarious liability stems from considerations other than the defendant's personal fault, for it assumes his innocence. . . . If the principle of liability or disability for individualized fault is taken as the norm, and vicarious liability or disability is regarded as an exceptional solution (to be justified only for reasons of policy sufficient in each case to warrant the exception), then there would be little justification indeed for imputing negligence to an innocent plaintiff in most cases." 2 Harper & James, supra, p. 1275; see also James, "Imputed Contributory Negligence," 14 La. L. Rev. 340 (1954); Mignone, "Imputed Negligence Revisited," 45 Conn. B.J. 187 (1971).

The general trend today is away from imputing contributory negligence. The new rule stated in Restatement (Second), 2 Torts § 485 rejects the doctrine in general, applying it only to master-servant and joint enterprise relationships and to actions for death or loss of services. We share this view. Our own legislature has recently expressed its approval of this trend with enactment of General Statutes § 52-572i, which provides that the family car doctrine shall not be applied to impute contributory or comparative negligence to the owner of any motor vehicle or motorboat.

We hold that the negligence of a learner cannot be imputed to an instructor to bar the instructor's recovery against a negligent third party. Such a recovery may be barred by the instructor's *own* negligence in instructing and supervising the learner, but the negligence of the learner alone will

not bar recovery. The court below was correct in sustaining the plaintiff's demurrer to the defendant's first special defense.

There is no error.

In this opinion the other judges concurred.