[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a foreclosure action brought by the plaintiff, Dime Savings Bank of New York ("Dime"), against the defendant, Jeffrey P. Bonaventura. Before the court is the plaintiff's motion to strike the defendant's special defenses. A chronological summary of the factual and procedural history of this case follows.
On December 5, 1995, the plaintiff filed a single count foreclosure complaint[1] against the defendant which contains the following allegations concerning the commercial arrangements between the parties. On April 13, 1987, the defendant issued a promissory note, entitled "Adjustable Rate Note", in favor of the original mortgagee, Dime Real Estate Services — Connecticut, Inc., in the principal amount of $58,300. In order to secure this note, the defendant contemporaneously executed a real property mortgage on the subject property, a condominium located in Waterbury, Connecticut, in favor of the original mortgagee. By the terms of the note, the maturity date of the loan was to be May 1, 2017, at which time all principal and interest on the loan would be due. Thereafter, on May 13, 1988, both the mortgage and note were assigned to the plaintiff.
The plaintiff further alleges that the defendant has failed to make his monthly payments on the loan since March 1, 1994 and seeks the following relief: (1) a foreclosure of the mortgage, (2) immediate possession of the subject property, (3) a deficiency judgment against the defendant, (4) the appointment of a receiver of rents for the subject property, and (5) money damages accompanied by an appropriate payment schedule.
On November 9, 1995, the defendant filed an answer and four special defenses. Thereafter, on December 4, 1995, the plaintiff filed a motion to strike the special defenses accompanied by a supporting memorandum. The defendant filed no objection to the motion. Oral argument was heard before the court, Kulawiz, J., at short calendar on February 7, 1996.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to CT Page 3972 state a claim upon which relief can be granted. . . ." (Citations omitted; internal quotation marks omitted.)Novametrix Medical Systems, Inc. v. BOC Group Inc.,224 Conn. 210, 214, 215, 618 A.2d 25 (1992). The motion to strike may be used to test the legal sufficiency of a special defense. Practice Book § 152(5); Nowak v. Nowak, 175 Conn. 112,116, 394 A.2d 716 (1978). In ruling on a motion to strike, the court is limited to the facts alleged in the pleading; Rowe v. Godou,209 Conn. 273, 278, 550 A.2d 1073 (1988); which must be construed in the light most favorable to the pleader. Gordon v. BridgeportHospital, 208 Conn. 161, 171, 540 A.2d 1185 (1988).
Practice Book § 164 defines the parameters of a valid special defense and provides in pertinent part:
 No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that he has no cause of action, must be specially alleged.
Thus, "[t]he purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." Grant v. Bassman, 221 Conn. 465, 472-73, 604 A.2d 814
(1992).
In a foreclosure action, defenses are generally limited to payment discharge, release, satisfaction or invalidity. ShawmutBank v. Wolfley, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 130109 (January 24, 1994, Dean, J., 9 CSCR 216). A foreclosure action, however, is an equitable proceeding where the trial court may consider all relevant circumstances to ensure that complete justice is done.Reynolds v. Ramos, 188 Conn. 316, 320, 449 A.2d 182 (1982); seeHans L. Levi, Inc. v. Kovacs, Superior Court, judicial district of Litchfield, Docket No. 56101 (November 4, 1991, Pickett, J., 6 CSCR 1062). "Therefore, many courts, exercising their equitable powers, have recognized allegations of mistake, accident, fraud, equitable estoppel, CUTPA, breach of the implied covenant of good faith and fair dealing, laches and the refusal to agree to a favorable sale to a third party as a valid defense to a foreclosure action." National Mortgage Co. v.McMahon, Superior Court, judicial district of New Haven, Docket CT Page 3973 No. 349246 (February 18, 1994, Celotto, J., 9 CSCR 300).
Courts have, however, limited these equitable defenses to only those which attack the making, enforcement, or validity of a note or mortgage. National Mortgage Co. v. McMahon, supra. The rationale behind this limitation "is that counterclaims and special defenses which are not limited to the making, validity or enforcement of the note or mortgage fail to assert any connection with the subject of the foreclosure action and as such do not arise out of the same transaction as the foreclosure action." Id.
The defendant argues that each of the special defenses should be stricken on the grounds of legal insufficiency. A separate analysis of each special defense and the plaintiff's arguments follows. A
Special Defense One
The first special defense alleges that the defendant's mortgage deed is unenforceable because it fails to comply with the mandates of General Statutes § 49-2 (d)(1). Specifically, the defendant alleges the mortgage fails to make the following disclosures: that the mortgage is a "reverse annuity mortgage loan"; that "it fails to set forth the dates on which any advancement is to be made"; and that "it fails to set forth the events which will give rise to the maturity of the loan".
As a threshold matter, it is readily apparent that this defense is a valid special defense to a foreclosure action because it alleges that the mortgage is unenforceable. Thus, this court should examine the legal sufficiency of this defense in light of the allegations of the plaintiff's complaint.
Section § 49-2 codifies, in part, the requirements for open-end mortgages securing future advances, and provides in pertinent part:
 (d)(1) Any mortgage to secure advancements made by a mortgagee or its assignee to a mortgagor pursuant to the terms of a mortgage securing a reverse annuity mortgage loan, as defined in subdivision (5) of subsection (a) of section 36a-265, shall be sufficiently definite and certain and valid to secure all CT Page 3974 money actually advanced pursuant to and in accordance with its terms, whether at or subsequent to closing of the loan, up to but not exceeding the full amount of the loan therein authorized with the same priority as if all such money had been advanced at the time such mortgage was delivered if such mortgage sets forth: (A) That it is a "reverse annuity mortgage loan" and contains a reference to subdivision (5) of subsection (a) of section 36a-265; (B) the full amount of the loan authorized; (C) a statement of the dates on which such advancements are to be made and the amounts of such advancements; and (D) the events which will give rise to the maturity of the loan.
(Emphasis added.).
A reverse annuity mortgage is "[a] mortgage format under which the mortgage loan proceeds are disbursed periodically over a long period of time to provide regular income for the borrower-mortgagor." BLACK'S LAW DICTIONARY, 6TH EDITION (1991). Likewise, General Statutes § 36a-265 defines a reverse annuity mortgage as "a mortgage loan in which loan proceeds are advanced to the mortgagors, in installments, either directly or indirectly, and which together with unpaid interest, if any, is to be repaid in accordance with subdivision (2) of subsection (e) of this section."
The legislative history of § 36-9g, now § 36a-265, contains an enlightening discussion regarding the characteristics of a reverse annuity mortgage:
 Reverse annuity mortgages are designed for retired people who need additional income in regular installments, who own their own home and who do not intend to leave their homes to their heirs. The borrower would make a loan that is paid to him by the lender in regular installments rather than one lump sum. The borrowers are guaranteed the right to live in their houses until their death. Repayment of the loan is made after the borrower's estate from the sale of the house. The only exception regarding repayment is if the borrower before death sells the house, then the lender will be repaid at the time of such sale.
21 H.R. Proc., Pt. 3, 1978 Sess., p. 1045. CT Page 3975
The plaintiff argues that the loan made to the defendant pursuant to the note was not a "reverse annuity mortgage", but, instead, a more traditional "negative amortization loan"[2] to which the provisions of § 49-2 (d)(1) are inapplicable.
An examination of the complaint and its attachments support the plaintiff's characterization of this transaction. The note indicates that the defendant was lent a lump sum of $58,300 at an annual percentage rate of seven and one-half percent. The note further provides that the defendant "will pay principal and interest every month" in the amount of $407.65 until May 1, 2017 at which time the balance, if any, would be due in full. These characteristics are clearly inconsistent with the existence of a reverse annuity mortgage ("RAM"). First and foremost, a RAM does not specifically provide for repayment of the loan by the mortgagor. The loan is, instead, repaid from the proceeds of the sale of the property. Consequently, there is also no fixed maturity date on the face of the instrument itself. It is submitted that these characteristics point to the existence of an amortized mortgage rather than a RAM.
The plaintiff's complaint alleges the existence of an amortized mortgage rather than a RAM. At the same time, General Statutes § 49-2 (d)(1) by its very terms applies only to a reverse annuity mortgage. For this reason, special defense one fails to demonstrate that the plaintiff has no cause of action. As such, this special defense is legally insufficient and is stricken. B
Special Defenses Two And Three
Special defenses two and three allege that the plaintiff has failed to make required disclosures in connection with the mortgage transaction between the parties. Special defense two contains the following allegations:
 1. The Plaintiff, prior to and at the time of the mortgage closing, failed to disclose the different types of mortgage loans, including each type of alternative mortgage loan offered by the Plaintiff, in violation of Connecticut General Statute 36-9g(d).
2. The Note and Deed are unenforceable. CT Page 3976 in a similar manner, special defense three contains the following allegations:
 1. The Plaintiff failed to advise the Defendant that he had the choice of applying for a standard mortgage loan or an alternative mortgage loan offered by the Plaintiff
General Statutes § 36a-265, formerly General Statutes § 36-9g(d), mandates that the following disclosures be made to prospective recipients of an "Alternative mortgage loan":
 (d)(1) Each Connecticut bank and Connecticut Credit union that offers or makes any type of alternative mortgage loan shall disclose to each person who requests an application for a mortgage loan or who states that such person is a prospective mortgage loan applicant such information concerning all types of mortgage loans, including each type of mortgage loan, offered by such bank or credit union as the commissioner shall prescribe by regulations. The commissioner may prescribe such forms for such disclosure.
 (d)(2) Each prospective mortgage loan applicant shall have the choice of applying for a standard mortgage loan or any type of alternative mortgage loan offered by such Connecticut Bank or Connecticut credit union.
(Emphasis added.)
The plaintiff argues that this statute is inapplicable to the facts of the present case because it is limited to "reverse annuity loans". A plaintiff's position is, however, contradicted by the plain language of § 36a-265 which mandates disclosures by all institutions that "make or offer any type of alternative mortgage loan" to "each person who requests an application for a mortgage loan". This same section further requires that each mortgage applicant shall have the choice of applying for either a traditional or an alternative mortgage. Thus, it is evident that the terms of § 36a-265 are not limited to transactions involving an RAM. Special defenses two and three are, therefore, valid as against the plaintiff's complaint despite the fact that it does not involve a RAM. Accordingly, the plaintiff's motion to strike is denied as to these counts. CT Page 3977
 C
Special Defense Four
Special defense four invokes the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes § 42-110b et seq., and contains the following allegations:
 1. Prior to the mortgage closing, the Defendant was advised by the representative of the Dime to sign a mortgage application and that the Dime had already agreed to finance the condominiums within the project.
 2. The Defendant was never advised that the mortgage loan would be a negative amortization mortgage loan or that the Defendant had the right to a standard mortgage loan.
 3. The actions of the Plaintiff, violated the Connecticut Unfair Trade Practices Act.
The defendant's sole argument is that this special defense should be stricken because CUTPA does not apply to banking activities. That this argument is specious in light of the Connecticut Supreme Court's ruling in Normand Josef Enterprisesv. Connecticut National Bank, 230 Conn. 486, 646 A.2d 1289
(1994), where the court held that "CUTPA does apply to banks." Id., 509.
Although the plaintiff has failed to advance this argument, this special defense is legally insufficient because it fails to raise the necessary factual predicate to invoke CUTPA. Although there is presently a split of authority in the Superior Court on the issue of whether CUTPA is properly pleaded a as a special defense; see, Beneficial Mortgage Co. v. Brassington,
Superior Court, judicial district of Danbury, Docket No. 31 89 33 (June 19, 1995, Stodolink, J.) (holding that "CUTPA provides for a separate, statutorily mandated cause of action and therefore does not comport with section 164."); First Federal Bank v.Zavatsky, Superior Court, judicial district of Danbury, Docket No. 30 89 50 (March 15, 1994, Moraghan, J., 9 CSCR 421); but see, Hans L. Levi v. Kovacs, Superior Court, judicial district of Litchfield, Docket No. 56101 (November 4, 1991, Pickett, J.,6 CSCR 1062) (CUTPA is recognized as a valid equitable defense to a foreclosure action); this court need not address this issue CT Page 3978 because the defendant has failed to allege the required elements of a CUTPA violation.
The required elements for a CUTPA violation are as follows:
 (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].
Daddona v. Liberty Mobile Home Sales, Inc.,209 Conn. 243, 254, 550 A.2d 1061 (1988). The allegations of special defense four fail to allege any of these elements. As such, this defense is legally insufficient and is stricken.
Based upon the foregoing, the motion to strike is granted as to counts one and four, but is denied as to counts two and three.
/s/ Kulawiz, J. KULAWIZ